IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES, | |
|     *Plaintiff* | Case Number: 1:22-CR-19-001;002;003 |
| v. | |
| MATTHEW PURDY, et. al | |
|     Respondent. | |

**OMNIBUS MOTION BY DEFENDANTS MATTHEW PURDY, GREGORY PURDY, JR., AND ROBERT TURNER TO REHEAR REQUEST TO SET TRIAL AT A LATER DATE, STAY CASE PENDING DECISION BY THE SUPREME COURT IN UNITED STATES V. FISCHER, 64 F. 4TH 329 (D.C. CIR. 2023) AND MOTION TO COMPEL DISCOVERY AND SANCTIONS FOR THE GOVERNMENT'S BAD FAITH TACTICS AND OBSRUCTION CONCERNING THE PRODUCTION OF BRADY AND JENCKS AND OTHER MATERIAL**

**I.   INTRODUCTION.**

At the status conference of February 29, 2024, the Honorable Royce C. Lamberth acted disrespectfully to the undersigned counsel when she simply advised the Court that she had applied for a judgeship in the State of Alabama well after becoming counsel for the Defendants Matthew Purdy, Gregory Purdy, Jr. and Robert Turner. It was felt that this disclosure should be made in the context of also asking that the trial in this case be set for a date which would provide for full and appropriate production and review of discovery of Brady, Jencks and other material, as the government has not been transparent and forthcoming in pre-trial production. *See Exhibit 1*. To the contrary, as set forth below, what the government has produced is a disorganized and largely unidentified, incomplete and jumbled mess, which even the Assistant U.S. Attorney assigned to this prosecution cannot adequately explain.

1

When the undersigned counsel raised this, the Court became hostile for no apparent reason and effectively refused to let her speak.

The undersigned counsel, having had the representation of the Defendants referred to her by Larry Klayman, the founder of both Judicial Watch and Freedom Watch, and who has appeared before this Court many, many times over decades, advised her that this disrespectful and hostile conduct was uncharacteristic of his experience. However, having followed the history of this Court concerning January 6, 2021, and even written about it, Mr. Klayman opined that it would appear that the Court is generally hostile to January 6 defendants, as evidenced by a number of over-the-top very prejudicial statements made in the past.[1] And, after the status conference, the undersigned counsel, thinking that something may have occurred or about February 29, 2024, that would upset the Court, learned of an article found on Google of that same date titled, *"Judges in Trump-Related Cases Face Unprecedented Wave of Threats,"* which article was primarily about the death and other threats regrettably made against Judge Lamberth, which he attributes to January 6. At the end of this article, Judge Lamberth admits "[l]iving this way does change your life," evidence that these threats have severely and emotionally affected him and his views of Jan. 6 defendants. See Exhibit 2.

Some of the myriad of comments this Court has made disparaging January 6 defendants and the politicians who have come to their defense of these largely peaceful protesters, include but are not limited to:

---

[1] The Court's pronouncements about the January 6 defendants, although not entirely analogous, is reminiscent of a case Judge Lamberth presided upon concerning the Indian Trust Fund, where the U.S. Court of Appeals for the District of Columbia Circuit, rightly or wrongly, removed him for the alleged prejudicial statements he had made. Peter, (July 12, 2006), *D.C. Circuit Boots Judge Royce Lamberth From Indian Case,* Wall Street Journal, https://www.wsj.com/articles/BL-LB-1894

**Quoting Washington, Lamberth wrote in his decision released Thursday that, "The very idea of the power of and the right of the people to establish government presupposes the duty of every individual to obey the established government."[2]**

**(If Washington had obeyed the established government of the British crown, we would not have a nation!)**

**"The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications of criminal activity have gone mainstream," Lamberth said, according to his prepared remarks.[3]**

**…**

**"I have been dismayed to see distortions and outright falsehoods seep into the public consciousness," Lamberth continued before he issued a stark warning: "The Court fears that such destructive, misguided rhetoric could presage further danger to our country."**

**…**

**Lamberth then made an effort to "set the record straight, based on what I've learned presiding over many January 6 prosecutions, hearing from dozens of witnesses, watching hundreds of hours of video footage, and reading thousands of pages of evidence."**

**…**

**"On January 6, 2021, a mob of people invaded and occupied the United States Capitol, using force to interrupt the peaceful transfer of power mandated by the Constitution and our republican heritage," he said. "The rioters interfered with a necessary step in the constitutional process, disrupted the lawful transfer of power, and thus jeopardized the American constitutional order. ... This was not patriotism; it was the antithesis of patriotism."**

**…**

**Lamberth went on to say that it was "a matter of right and wrong" and that it fell to judges to say the actions of those who broke the law on Jan. 6 were wrong.**

---

[2] Choi, Joseph, *Federal Judge Blocks Release of Man Accused of Carrying Plastic Restraints Into Capitol During Riot,* (February 18, 2021) *The Hill,* https://thehill.com/homenews/state-watch/539493-federal-judge-blocks-release-of-man-accused-of-carrying-plastic/

[3] Marcus, Ruth, *Opinion, A federal judge is fed up with those defending the Jan. 6 rioters*, (January 29, 2024) *The Washington Post,* https://www.washingtonpost.com/opinions/2024/01/29/judge-jan6-riot-insurrection-trump/

3

> …
>
> **"The Court does not expect its remarks to fully stem the tide of falsehoods. But I hope a little truth will go a long way," he said.[4]**
>
> **"I have been shocked to watch some public figures try to rewrite history, claiming rioters behaved 'in an orderly fashion' like ordinary tourists, or martyrizing convicted Jan. 6 defendants as 'political prisoners' or even, incredibly, 'hostages,'" wrote Judge Lamberth, a 1987 appointee of President Ronald Reagan. "That is all preposterous. But the court fears that such destructive, misguided rhetoric could presage further danger to our country."**
>
> …
>
> **"Little cannot bring himself to admit that he did the wrong thing, although he came close today. So, it is up to the court to tell the public the truth: Mr. Little's actions, and the actions of others who broke the law on Jan. 6, were wrong. The court does not expect its remarks to fully stem the tide of falsehoods. But I hope a little truth will go a long way."[5]**

## II. THIS COURT SHOULD CONSIDER IN LIGHT OF THE DEATH THREATS AND OTHER CIRCUMSTANCES STEPPING ASIDE ON THIS CASE GIVEN THAT HE IS NOW PERSONALLY INVESTED AND EMOTIONALLY INJURED.

Notwithstanding that there a number of recognized studies and other indicia showing that the District of Columbia is a toxic environment when it comes to January 6, given its overwhelmingly leftist and Democrat demographic and thus tainted jury pool[6], when the

---

[4] Reilly, Ryan, *Reagan-Appointed Judge Warns GOP's 'preposterous' claims about Jan. 6 could pose threat,* NBC News (Jan. 25, 2024) https://www.nbcnews.com/politics/justice-department/reagan-appointed-judge-warns-gops-preposterous-claims-jan-6-pose-threa-rcna135754

[5] Savage, Charlie, *Republican-Appointed Judge Denounces Republican Distortions of Jan. 6,* NY Times, (Jan. 25, 2024), https://www.nytimes.com/2024/01/25/us/republican-judge-royce-lamberth-jan-6.html#:~:text=by%20the%20Numbers-,Republican%2DAppointed%20Judge%20Denounces%20Republican%20Distortions%20of%20Jan.,and%20called%20them%20"preposterous."&text=Charlie%20Savage%20writes%20about%20national%20security%20and%20legal%20policy.

[6] Parloff, Roger, (Jan. 30, 2023), *Are Jan. 6 Defendants Getting a Fair Shake From D.C. Juries? Comparing Jury and Bench Trial Outcomes,* Lawfare, https://www.lawfaremedia.org/article/are-jan.-6-defendants-getting-a-fair-shake-from-d.c.-juries-comparing-jury-and-bench-trial-outcomes

4

presiding judge is also hostile to January 6 defendants and those who support them, this is a recipe for the manifestation of extreme prejudice to fair pre-trial and trial proceedings.

28 U.S.C § 455(a) provides:

**"[A]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."**

Thus, given all of this, the undersigned counsel respectfully asks this Court to consider where he can administer to this case in an impartial fashion, and to make this analysis in an objective manner. Defendants themselves submit that he cannot under the circumstances.

The undersigned counsel does not seek to offend this Court, but feels herself duty bound to raise this seminal issue, particularly given the totally unjustified hostility and disrespect shown to her at the February 29, 2024, status conference. In this regard, the transcript of this status conference will be ordered for the record.

### III. THE GOVERNMENT HAS INTENTIONALLY OR NEGLIGENTLY FAILED TO PRODUCE REQUIRED DISCOVERY CAUSING CONSIDERABLE DELAY AND PREJUDICE.

Obtaining discovery information has been arduous and counsel for the Defendants has been essentially inundated with useless information and sent on a fishing expedition. The undersigned has reviewed countless hours of videos produced by the government which appear to contain no relation to the Defendants or contain videos with no known videographer with multiple start and

---

Reilly, Ryan, (Feb. 28, 2022), *Jury Selection in First Jan. 6 Trial Revives D.C. Residents' Anger About Capital Attack,* https://www.lawfaremedia.org/article/are-jan.-6-defendants-getting-a-fair-shake-from-d.c.-juries-comparing-jury-and-bench-trial-outcomes

Kunzelman, Michael, (Jul. 6, 2022), *Judges Keeping Capitol Riot Trials In DC Amid Bias Claims,* Associated Press, https://apnews.com/article/capitol-siege-biden-riots-michigan-congress-f19fc848924fcce595caa8067376691b

Qin, Amy, (Aug. 3, 2023), *Trump's Jury for Jan. 6 Trial: A City That Remembers the Capitol Attack,* The New York Times, https://www.nytimes.com/2023/08/03/us/trump-jan-6-jury-washington.html

stop points, making the context and timing unknown. The videos have been produced, without explanation and the vast majority of which did not even show the Defendants in the footage. Of particular interest to the Defendants was the body cam footage contained in exhibit 85-1, which appears to be the body cam footage from Officer Owais Akhtar where in an unidentified officer stated "*He just told you officials, y'all didn't see it. I didn't see it. None of us can testify what these guys are getting locked up for. What the fuck are we doing here?*"

In an attempt to address the discovery issues and the missing body cam footage, the undersigned included very specific language in paragraphs 10-17 of the letter sent to Lynnette Wagner on February 26, 2024. *See Exhibit 3*. The letter requested specific body cam footage of the officers who detained, the Defendants, released the Defendants, the body cam of the officer Defendant Gregory Purdy allegedly "lunged into", the body cam footage of the officer Gregory Purdy voiced intention of a "peaceful protest", the body cam footage of any officers telling and/or asking the Defendants to leave the building, the body cam footage of the Defendants leaving the building, all police communications to or between officers within the capitol building or in proximity to the Capitol building on January 6, 2021 wherein they were instructed to allow and/or admitted to allowing individuals attending the protest access to, or entry into the Capitol building, the body cam footage of any officer Defendant Robert Turner allegedly assaulted (only screenshots were provided) and any body cam footage of any officer who came in contact with any of the Defendants at any time on January 6, 2021. This information has never been received.

Based upon information and belief, the various social media accounts of the Defendants were used to obtain information, albeit cherry-picked, to form the basis of this case. The social

media accounts were seized and the Defendants have been denied access to the accounts and the content in the accounts despite the same being instrumental in the cases against them.

In addressing the Defendant's social media account content that does not appear in the databases referred to by the Government, the undersigned sent Assistant U.S. Attorney Lynnette Wagner the following email:

> "*Lynnett,*
>
> *This email follows up from our conversation last week regarding discovery. In reviewing the information, it appears that the government intends to rely on the Defendants social media accounts. As you are aware, they no longer have access to any of their social media accounts nor are the accounts in any of the databases. We would need the information in the accounts seized by the government both immediately before and after the protest on January 6.*
>
> *I am still having a difficult time navigating the databases where I was directed to find all of the requested information, as the data is so incredibly voluminous and challenging to navigate. If you have the information requested in the discovery letter sent last week, I would greatly appreciate it.*
>
> *Thank you,*
>
> *Melissa L. Isaak*"

In response, Ms. Wagner responded with three uninformative, what appear to be form letters, which summarized in only a cursory fashion and dodged the process of previous disclosure, copies of emails which contained information largely publicly available and once again cavalierly and dismissively referred the undersigned to Evidence.com and the federal databases. None of the information provided to the undersigned contained the social media information as it existed at the time they were seized from the Defendants, nor did it her response address the requested social media information. To date, the Defendants have had no access to their social media accounts since they were seized some years ago and are not able to refresh their recollection nor dispute claims due to the missing information.

Finally, Defendants have requested documents and records concerning the admittedly illegal surveillance of January 6 protestors, which include them, in violation of § 702 of the Foreign Intelligence Surveillance Act. None has, for obvious reasons, has been forthcoming. Such evidence was obtained illegally and unconstitutionally, and this could nullify the prosecutions. *Exhibit 4.* At the status conference on February 29, 2024, this Court cavalierly dismissed the importance of this issue. But this matter cannot and should not be disregarded, as it is one of the many "elephants in the room" of these politicized prosecutions, designed by the Biden Justice Department to send a message that dissent will not be tolerated particularly during a presidential election year.

Defendants, through undersigned counsel, moves this Honorable Court to enter an order that the U.S. Government must disclose to the Defendants promptly, the requested information necessary to their defense pursuant to pretrial discovery under Rules 6(e)(3)(C) and 19(a)(1)(A) of the Federal Rules of Criminal Procedure, Rule 16 of the same, *Brady v Maryland*, 373 U.S. 83 (1963) and progeny, and the Defendants' Due Process rights under the U.S. Constitution.

### IV. THIS CASE SHOULD RESPECTFULLY BE STAYED PENDING THE SUPREME COURT'S DECISION IN UNITED STATES V. FISCHER, 64 F. 4TH 329 (D.C. CIR. 2023).

Defendants Matthew Purdy, Gregory Purdy, Jr. and Robert Turner ("Defendants") hereby move this Court for an order staying further proceedings in this action pending the resolution of the United States Supreme Court of *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). On December 13, 2023, the United States Supreme Court granted *certiorari* in *Fisher*, a case that is anticipated to provide guidance on legal issues that have been presented in this case. Therefore, a stay of action will serve the orderly administration of justice. The Defendants Matthew Purdy, Gregory Purdy, Jr. and Robert Turner will suffer substantial hardship if they ultimately are found

8

guilty in this case when the Supreme Court is currently reviewing the very issues faced by Defendants Matthew Purdy, Gregory Purdy, Jr. and Robert Turner, in *Fischer.* Indeed, the time and resources that will be expended in addressing Defendants direct appeal, and underlying merits of the case undoubtedly will impose a heavy burden on the defendants and the Court. In contrast, the government will not be harmed by a relatively brief stay while the Supreme Court considers *Fischer.*

### The *Fischer* appeal.

The Supreme Court recently granted certiorari in *United States v. Fischer*, a companion set of three consolidated January 6 cases involving the applicability of 18 U.S.C. Section 1512(c)(2)—the identical statute faced by Defendants Greg Purdy and Matthew Purdy—to the events of January 6. The Court will resolve whether § 1512(c)(2) covers "acts unrelated to investigations and evidence" While the scope and scale of the Supreme Court's review in *Fischer* is potentially wide-ranging, the Supreme Court will almost certainly lay down rules regarding whether the statute applies to the volatile protests and demonstrations of January 6, 2021.

In short, the Supreme Court's ruling in *Fischer* will almost certainly impact this case; and if the Supreme Court invalidates the applicability of Section 1512 to Jan. 6, one of the criminal statutes Defendants Greg Purdy, Jr. and Robert Turner were charged with, along with misdemeanor counts.

i.  **STANDARD FOR ISSUING A STAY**

It is well established that a district court has discretionary power to stay proceedings before it. *Landis v. North America Co.,* 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the

9

causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") The part seeking a stay of judicial proceedings bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255.

   ii.   **LEGAL ISSUES THAT DEFENDANTS PLAN TO ARGUE FURTHER WHICH ARE SIMILAR TO THOSE BEING RESOLVED IN** *FISCHER*

A.   **LEGISLATIVE INTENT BEHIND 18 U.S.C. §1512(C)(2)**

The Congressional Record makes clear to us that 18 U.S.C. 1512 is not applicable in this case, as well as other January 6th cases.

Title 18 had been amended in 2008, to protect "judges, prosecutors, witnesses, victims, and their family members." 18 U.S.C. §1512.

The most recent legislative proceedings on the code increased the maximum penalties for "killing or attempting to kill a witness, victim or informant to obstruct justice." 18 U.S.C. §1512.

Section 1512, as amended, "should be read in conjunction with the new Section 1519, which criminalizes certain acts intended to impede, obstruct or influence 'any matter'." *Tampering with a record or otherwise impeding an official proceeding.*, WGL-SOACT ¶ 1102. Several senators have remarked that the overlap between section 1512 and 1519 are plentiful. See 148 Cong. Rec. at 12512 (remarks of Sen. Lott); id., at 12513 (remarks of Sen. Biden); id., at 12517 (remarks of Sens. Hatch and Gramm).

Taking these two sections together and looking at the Act's most recent history, it is clear that the legislative intent behind section 1512 is to prevent foul play throughout *trials*, not the certification of Electoral College votes. (Emphasis added). 1512(c)(2) was designed to ensure

that trials are conducted fairly. Specifically, and as the Act's title reiterates, the goal is to have *witnesses* and key personnel present in trials. To do this, the act seeks to prevent individuals from making witnesses feel as though they cannot speak in court. (Emphasis added). The Act attempts to block foul play during a trial, not before a complaint is filed or proceedings begin.

As discussed further below, the election certification ballot count on January 6th included no trial. There was no judge, jury, or examination of witnesses. There was no litigation between private parties. Ultimately, there was no litigation at all.

**B. "ADMINISTRATION OF JUSTICE" IS A LIMITED PHRASE WHICH IS NOT AN ENCOMPASSED "OFFICIAL PROCEEDING" WITHIN 18 U.S.C. §1512(C)(2)**

Judicial interpretation can guide the court today, in finding that 18 U.S.C. §1512(c)(2) is not relevant to these proceedings. In *Yates v. United States*, Justice Kagan, in her dissent makes clear that 1512(c) applies only to official proceedings. *Yates v. United States*, 574 U.S. 528, 557 (2015). Justice Elena Kagan defines "official proceeding" to include any "proceeding before a judge or court of the United States." *Id.* Justice Kagan definitively states that §1512(c) prohibits tampering with evidence in federal litigation between private parties. *Id.*

Other courts have emphasized that to be liable under 18 U.S.C. §1512, the actions of the individual must occur during an official proceeding. See *United States v. Burge*, 711 F.3d 803, 808 (7th Cir. 2013); *United States v. Reich*, 479 F.3d 179, 185-187 (2d Cir. 2007).

Furthermore, the court in *Reich* took it a step further and applied a "nexus requirement" to 18 U.S.C. §1512. *Id* at 185 – 186 (citing *United States v. Aguilar,* 515 U.S. 593 (1995)). To satisfy the nexus requirement, the defendants' conduct must "have a relationship in time, causation, or logic with the judicial proceedings." *Id*. (citing *Aguilar,* 515 U.S. at 599). Specifically, the *Reich* court held that under 18 U.S.C §1512, it must be shown that the endeavor

taken by the defendants "must have the natural and probable effect of interfering with the due administration of justice."

Some district courts have found that the events of January 6 fall under the "administration of justice" language based on the congressional proceedings like the Electoral College certification, that was occurring and thus, applied 18 U.S.C. §1512 to those cases. See *United States v. Wright*, 2023 WL 2387816 (D.D.C. Mar. 4, 2023). Following this inconsistent logic, courts have found that the certification of Electoral College votes is an official proceeding which involves the administration of justice. *Id.*

However, this analysis is flawed, as correctly discussed in *Sandlin*, where the court stated that it "will not read an 'administration of justice' requirement into 'official proceeding.'" *United States v. Sandlin*, 575 F. Supp. 3d 16 (D.D.C. 2021). Supporting this logical judicial analysis, the court in *Seefried*, declined to enhance sentencing for a defendant charged with obstructing an official proceeding, despite the government's request to apply interfering with the administration of justice to his sentencing. *United States v. Seefried*, 639 F. Supp. 3d 8 (D.D.C. 2022). The court in *Seefried*, concluded that the administration of justice does not include congressional proceedings like the Electoral College certification. *Id.* As the court has plainly stated in *Montgomery*, "Congress does not engage. . . in the administration of justice." *United States v. Montgomery*, 578 F. Supp. 3d 54 (D.D.C. 2021).

### C. THERE WAS NO OFFICIAL PROCEEDING OCCURRING WHEN THE ALLEGED OFFENSES OCCURRED

Even if the court finds that an official proceeding was occurring that day, Defendants Gregory Purdy, Jr. and Robert Turner could not have been a part of the obstruction. The Senate and the House were called into recess at 2:20 p.m. EST.[7] There have been no allegations made

---

[7] https://www.cnn.com/2022/07/10/politics/jan-6-us-capitol-riot-timeline/index.html.

by the government that Defendants Gregory Purdy, Jr. and Robert Turner entered the capitol building before the recess occurred.

Black's Law Dictionary defines "obstruction" as "to block up; to interpose obstacles; to render impassable; to fill with barriers or impediments; as to obstruct a road or way."

While the Senate and the House were in the process of certifying Electoral College votes, Defendants Matthew Purdy, Gregory Purdy, Jr. and Robert Turner were not in the Capitol building at any point in time.

In sum, good cause exists for a stay because in *Fischer*, the United States Supreme Court is currently reviewing legal issues that are also presented in this case – where the intent behind §1512 was to apply to trials or to situations such as counting of Electoral College votes, whether the counting of Electoral College votes falls under the umbrella of an "official proceeding," and whether an official proceeding could be occurring if the Senate and the House were on recess when the defendants' alleged actions occurred.

If a stay is not granted and this action proceeds while *Fischer* is pending, the parties will incur substantial unnecessary costs and Court rulings could be at odds with the law interpreted by the Supreme Court. Temporarily staying the case at this early stage while awaiting the Supreme Court's ruling in *Fischer* will benefit the parties, conserve the Court's resources, and promote the orderly course and fair and just administration of justice. The Defendants respectfully request that this action be stayed pending a decision by the Supreme Court in *Fischer.*

## V.    CONCLUSION

For all of these compelling reasons, in the interest of justice this case should be stayed with an anticipated trial date set to commence after the estimated date that the Supreme Court

will rule in Fischer, as well to allow for important discovery to finally be produced and reviewed, which has thus far has not been forthcoming by the government.

In addition, it is respectfully requested that this Court consider when it can impartially preside over this case whose underlying events occurred in Washington, D.C., compounding the bias of a tainted and skewed Democrat and leftist jury pool in the District of Columbia, for the reasons set forth above.

**THE DEFENDANTS ALSO RESPECTFULLY REQUEST A HEARING TO ADDRESS THESE ISSUES, THIS TIME WITH AN OPPORTUNITY FOR THE UNDERSIGNED COUNSEL TO SPEAK AND PRESENT ARGUMENT TO THE COURT IN FURTHERANCE OF THIS MOTION AND IN THE INTEREST OF JUSTICE.**

**RESPECTFULLY SUBMITTED on this the 11th day of March, 2024.**

/s/Melissa L. Isaak
Melissa L. Isaak (ISA 007)
Attorney for the Defendants
2815 Zelda Road, Suite B
Montgomery, AL. 36106
334-262-8200
Melissa@Protectingmen.com

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing document was filed on this the 11th day of March, 2024, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system.  All attorneys of record will receive an electronic copy.

/s/ Melissa L. Isaak