**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | |
| **GREGORY RICHARD PURDY, JR.,** **MATTHEW PURDY, and** **ROBERT TURNER,** | **CASE NO. 21-cr-19 (RCL)** |
| **Defendants.** | |

**UNITED STATES' RESPONSE TO DEFENDANTS' OMNIBUS MOTION TO REHEAR REQUEST TO SET TRIAL AT A LATER DATE, STAY CASE PENDING DECISION BY THE SUPREME COURT IN *FISCHER* AND MOTION TO COMPEL DISCOVERY AND SANCTIONS**

**INTRODUCTION**

The United States, by and through the undersigned Assistant U.S. Attorneys, respectfully asks this Court to deny defendants' Omnibus Motion to Rehear Request to Set Trial at a Later Date, Stay Case Pending Decision by the Supreme Court in *Fischer v. United States*, No. 23-5572 (U.S.), and Motion to Compel Discovery and Sanctions.

The United States of America respectfully opposes defendants Gregory Purdy, Matthew Purdy and Robert Turner's Motion to Stay the trial in this case pending the Supreme Court's resolution of *Fischer* (ECF No. 99, pp. 8-13), which is, in effect, a motion to stay their trial until at least mid-2024. On December 13, 2023, the United States Supreme Court granted certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), cert. granted 23-5572. The Supreme Court will consider the interpretation of the statute criminalizing obstruction of an official proceeding, 18 U.S.C. § 1512(c)(2), which is one of the crimes charged against defendants Gregory Purdy and

Robert Turner.  This development does not merit a continuance of the trial scheduled for April 22, 2024.

Further, defendants separately allege that the Government has "intentionally or negligently failed to produce required discovery causing considerable delay and prejudice" (ECF 99, pp. 5-8). And the defendants ask the Court to "consider in light of [certain] death threats and other circumstances stepping aside on the case," assertedly on the theory that the Court is now "personally invested and emotionally injured" (ECF 99, pp. 2-5).  Neither request has merit.  The government has committed no discovery violation; to the contrary, the defendants have had access to the materials they purport to single out in their motion for months.  And their *ad hominem* attacks against the Court are as insubstantial as they are inappropriate.

## BACKGROUND AND PROCEDURAL HISTORY

On November 4, 2021, the defendants were charged in a criminal complaint. ECF 1.  On January 14, 2022—over two years ago—the defendants were charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.  ECF 22.

Two of the defendants—Gregory Purdy and Robert Turner—are charged with three felony charges (Civil Disorder in violation of 18 U.S.C. § 231(a)(3), Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), and Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2))—and two misdemeanor charges (Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4), and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F)).

Furthermore, all three defendants—Gregory Purdy, Matthew Purdy and Robert Turner— are charged with four misdemeanors: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in

violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

The government has provided defendants' counsel with access to Global Discovery since early 2002. *See* ECF 28, 29. As the Court is aware, the Global Discovery database includes, among other information, a comprehensive repository of U.S. Capitol Police Closed Circuit Video ("CCV") containing video from the interior of the U.S. Capitol and from the Capitol grounds, as well as body-worn camera footage from officers deployed to the Capitol on January 6, 2021. In this case, the government provided defendants' prior counsel with access to Global Discovery beginning in February 2022. And the government provided access to Global Discovery to defendants' *current* counsel beginning in September 26, 2023, shortly after current counsel entered her appearance. ECF 81-1, p. 2.[1] In addition, the government has continued to provide defendants' counsel with access to supplemental Global Production Volumes, up to and including the most recent production on February 15, 2023. The government also provided defendants with a summary of, and index of the files produced, with each of these Global Discovery Productions, as well as information regarding how the Global Discovery is coordinated by the Federal Public Defenders Office.

In addition, throughout this prosecution, the government has provided extensive case-specific discovery to defendants. In December 2021, for example, the government provided defendants' prior counsel with discovery including U.S. Capitol Police CCV footage, video footage from Metropolitan Police Department (MPD) officers' body-worn cameras, witness

---

[1] On March 20, 2024, Mr. Barket entered an appearance on behalf of defendant Gregory Richard Purdy. ECF 105. On March 22, 2024, Mr. Pallas entered an appearance on behalf of defendant Robert Turner. ECF 107. On March 22, 2024, the government provided Mr. Barket and Mr. Pallas access to Global Discovery Productions 1-32 in this case.

statements, and an open-source video. At that time, the government also produced the videos, pictures and other information obtained from defendants' Instagram social media accounts pursuant to search warrants. In January 2022, the government produced additional U.S. Capitol CCV footage of the defendants inside the Capitol. In June 2023, the government produced video footage from two additional MPD officers' body-worn cameras to the defendants. The government has also produced additional case-specific discovery to the defendants including investigative reports.

In August 2023, the defendants replaced their prior counsel with current defense counsel, Ms. Isaak. On or about September 25, 2023, defendants' new (and current) counsel informed the government that she had received the case-specific discovery from defendants' prior counsel. *See* ECF 81-1. And, since then, the government has continued to produce case-specific discovery to the defendants' current counsel. In September 2023, for example, the government produced to defendants' current counsel over forty open-source videos and an FBI report. That report described thirty-seven of those videos and identified the specific times that the defendants were initially seen on the open-source videos. This production consisted, principally, of open-source videos that showed defendants (1) at a rally near the Washington Monument, (2) advancing towards the Capitol, (3) confronting a group of MPD officers on the west side of the Capitol, (4) near a scaffolding on the west side of the Capitol, (5) ascending a staircase near the scaffolding, (5) pushing and then crossing police barricades on the Upper West Terrace; (6) running across the Upper West Terrace to the Senate Wing Door; (7) defendants Gregory Purdy and Robert Turner confronting and assaulting a line of MPD officers on the Upper West Terrace; (8) Gregory Purdy after he was detained by officers; and (9) other rioters at the Capitol located near the defendants on January 6. This production also included a portion of several MPD Officers' body-worn camera

footage, including the body-worn camera footage from MPD Officer Owais Akhtar (which is referenced in the defendants' motion). ECF 99, p. 6.

On December 13, 2023, the government produced (or, more precisely, *re*produced) two additional MPD officers' body-worn camera footage—recordings that had previously been produced to the defense in Global Discovery. And, on March 12, 2024, the government did the same with respect to three additional U.S. Capitol Police CCV videos showing defendants outside the Capitol Building inside the restricted area—recordings that, again, had been previously produced to the defense in Global Discovery.  Finally, on March 15, 2024, the government provided body-worn camera footage for five additional MPD officers, including the full body-worn camera footage of MPD Officer Owais Akhtar (which had previously been produced in Global Discovery and included footage of defendant Greg Purdy after he was detained by MPD officers), and a clearer copy of a previously produced open-source video.  Although not required by the Court or any applicable statute or rule, the government identified the specific times when the defendants appeared on many of these videos and/or provided shorter clips specifically narrowed to the portions showing the defendants.

Despite these comprehensive discovery productions, on February 26, 2024—three days before the last status conference—defense counsel wrote a letter to the government requesting production of various materials.  *See* ECF No. 99-1, Ex. 3.  Although the letter is mostly boilerplate, as relevant to the defendants' motion, it requested "body camera footage" of various unidentified officers who came in contact with defendant Purdy—materials that, to the extent they can be identified based on the defendants' vague descriptions, had previously been produced in Global Discovery and/or case-specific discovery.  Nonetheless, as a professional courtesy (and out

of an abundance of caution), on March 14, 2024, the government reproduced all of the case-specific discovery produced prior to March 12, 2024.[2]

As the Court is aware, this case has been pending before the Court for over two years.  For most of this time, each defendant was represented by separate counsel, and the parties conducted a number of status conferences with the Court.  At several of these conferences, the parties requested additional time to review discovery and conduct plea negotiations. *See* ECF 43, 48, 63, 71.  On August 4, 2023, the defendants indicated that Ms. Isaak, new counsel would be entering an appearance for all three defendants.  Former defense counsel filed motions to withdraw, over the government's objection.  ECF 82, 83, 84, 85, 86, and Minute Entry dated August 4, 2023.  After several hearings, the Court granted the prior counsels' motions to withdraw.  Minute Entry dated December 18, 2023.  On February 29, 2024, the Court set jury trial to begin on April 22, 2024.

## ARGUMENT

## I.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO STAY PENDING THE SUPREME COURT'S DECISION IN FISHER OR ON ANY OTHER GROUNDS

### A.   Legal Standard

Staying one case while "a litigant in another [case] settles the rule of law that will define the rights of both" is granted "only in rare circumstances." *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2021 WL 2227335, at *5 (D.D.C. June 1, 2021) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936))).  When evaluating whether to issue a stay, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

---

[2] On Friday, March 22, 2024, the government produced a copy of all case-specific discovery provided to date in the case to Mr. Barket and Mr. Pallas.

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The third and fourth factors "merge" when a party moves for a stay against the government. *Id*. at 435.  A stay "'is not a matter of right, even if irreparable injury might otherwise result.'" *Id*. at 433 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).  The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

> **B.**     **The Court Should Deny the defendants' Motion to Stay the Trial Pending**
> ***Fischer***

The defendants' motion should be denied because all relevant factors weigh against their request.  First, the fact that the Supreme Court granted certiorari in *Fischer* does not establish that the defendants Gregory Purdy and Robert Turner are likely to succeed on the merits of any challenge to their Section 1512(c)(2) charge.  At this time, a panel of the D.C. Circuit and every district court judge but one has agreed with the government's interpretation of that statute.  *See Fischer*, 64 F.4th at 338 ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions. . . . The district judge in the instant case stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants.").  The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided.  *See, e.g., Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question.").  Moreover, one Circuit judge has explained how, even were the Supreme Court to reverse the Court of Appeals in *Fischer*, defendants who obstructed the certification would still be convicted.  *See Brock v. United*

*States*, No. 23-3045 (D.C. Cir. May 25, 2023) (per curiam) (Millet, J., concurring).  Were every criminal case stayed while a potentially applicable issue was litigated on appeal in a separate case, the criminal justice system would grind to a halt.  *Fischer* and other cases challenging the application of 18 U.S.C. § 1512(c)(2) have been pending for some time, and such developments did not previously merit a broad stay.  Nothing has changed by virtue of the Supreme Court's decision to grant *certiorari* in *Fischer*.

Additionally, it is unlikely that any decision in *Fischer* would be issued by the Supreme Court before the end of its term in June of 2024.  That would be nearly three-and-a-half years after the commission of the offenses on which the defendants Gregory Purdy and Robert Turner have been charged.  Delaying the trial for another two months or more would undermine the interests of the public in the timely adjudication of a case of great significance.

A further lengthy delay of trial for the defendants would also afford them an unfair advantage not granted to other similar January 6 defendants, many of whom were also convicted of obstruction of Congress and whose Sentencing Guidelines calculations and sentences were heavily influenced by the fact that they were convicted of that offense.

On the side of the scale, the defendants will not suffer any irreparable injury by proceeding with trial as scheduled next month.  Even were the Supreme Court to decide *Fischer* adversely to the government, it is not clear that the Court's interpretation of Section 1512(c)(2) would necessarily invalidate the defendants' charges in this case.  And even if it did, the appropriate venue for challenging such charges would be a post-sentencing appeal.

Moreover, obstruction of Congress is not the only charge against the defendants Gregory Purdy and Robert Turner.  These defendants will also be tried for civil disorder under 18 U.S.C. § 231(a)(3), assaulting, resisting, or impeding certain officers under 18 U.S.C. § 111(a)(1),

entering and remaining in a restricted building or grounds under 1752(a)(1), disorderly conduct in a restricted building or grounds under 18 U.S.C. § 1752(a)(2), engaging in physical violence in a restricted building or grounds under 18 U.S.C. § 1752(a)(4), disorderly conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D), physical violence in the Capitol grounds or building under 40 U.S.C. § 5104(e)(2)(F), and parading, demonstrating or picketing in a Capitol building under 40 U.S.C. § 5104(e)(2)(G).  All these additional charges are outside the scope of the issues pending before the Supreme Court in *Fischer*.  Even if the Supreme Court issues an adverse ruling to the government's position, and defendants Gregory Purdy and Robert Turner were only to be found guilty on the remaining charges, the defendants' sentencing would likely occur a few months after trial.  Even if the jury returned guilty verdicts, and defendants Gregory Purdy and Robert Turner were detained after the verdicts, they would face significant criminal sentences as a result of the remaining felony and misdemeanor charges.  Accordingly, it is unlikely that defendants Gregory Purdy and Robert Turner would have served their full sentences on just the 18 U.S.C. §§ 231(a)(3), 111(a)(1), 1752(a)(1), 1752(a)(2), 1752(a)(4), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(F), and 5104(e)(2)(G) charges by mid-June.  And if it does somehow happen that defendants Gregory Purdy and Robert Turner served their full sentences on the remaining counts of conviction before the Supreme Court resolves *Fischer*, they could move for release pending appeal at that point under 18 U.S.C. § 3143(b). *See, e.g., United States v. Donovan Crowl*, 21-cr-208 (APM) Dec. 20, 2023 Minute Order (denying motion to stay sentencing pending ruling in *Fischer* and noting that defendant also set to be sentenced for violation of 18 U.S.C. § 231(a)(3)).

For all these reasons, the defendants' motion to stay the case pending a decision in *Fischer* should be denied, and the Court should proceed with trial on April 22, 2024.

**C.      To the Extent the defendants' Stay Request Is Based on Any Grounds Distinct from Those Presented in *Fischer*, Those Grounds Lack Merit**

For the reasons stated above, the pendency of *Fischer* in the Supreme Court—and of certain legal issues regarding the scope of 18 U.S.C. § 1512(c)(2)—does not warrant a stay in this case. In their motion, however, the defendants also appear to venture beyond the issues actually presented in *Fischer* and devote several pages (pp. 10-13) to discussing issues that, in the defendants' words, are "similar to" (*id.* at 10)—but presumably distinct from—the issues "being resolved in *Fischer*." *Id.* (capitalization altered); *see id.* at 10-13 (discussing the "legislative intent behind" the statute; the "'administration of justice' … limited phrase"; and whether Congress' certification proceeding constitutes an "official proceeding" under the statute).

The defendants' contention is meritless.  To the extent the "similar" issues noted by the defendants are, in fact, the *same* legal issues pending before the Supreme Court in *Fischer*, the defendants' stay motion fails for the reasons set forth above.  And to the extent the purportedly "similar" issues are *distinct* from the issues presented before the Supreme Court in *Fischer*, the defendants have failed to explain how or why such *different* issues should support a stay pending *Fischer*[3]—especially where, as here, the D.C. Circuit in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), and all judges of this Court have rejected analogous claims with near unanimity. *See United States v. Bingert*, 21-cr-91, 605 F. Supp. 3d 111 (D.D.C. 2022) (Lamberth, J.).[4]

_____

[3] The defendants do not raise those "similar" issues as a ground for dismissal.  And, in any event, a motion to dismiss under Rule 12 would be untimely at this point.

[4] The defendants' arguments have also been rejected by all but one of the judges in this District. *See, e.g., United States v. Fitzsimons*, 21-cr-158, 605 F. Supp. 3d 132 (D.D.C. 2022) (Contreras, J.); *United States v. Gillespie*, 22-cr-60 (BAH), ECF 42; *United States v. Lyons*, 21-cr-79 (BAH), ECF 71; *United States v. Hale-Cusanelli*, 21-cr-37, ECF 82 (D.D.C. May 6, 2022) (McFadden, J.) (motion to dismiss hearing at pp. 4-8); *United States v. McHugh* (McHugh II), 21-cr-453, 2022 WL 1302880 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.); *United States v. Grider*, 21-cr-22, 585 F. Supp. 3d 21 (D.D.C. 2022) (Kollar-Kotelly, J.); *United States v. Nordean*, 21-cr-175, 579 F. Supp. 3d 28

## II.   THE GOVERNMENT HAS PRODUCED DISCOVERY IN THIS CASE ADDRESSING THE DEFENDANTS' REQUESTS

The defendants also separately allege that the government has not provided the required discovery. Those assertions are without merit. Contrary to defendants' claims, the government has produced all evidence subject to disclosure through Global Discovery and case-specific discovery.

Defendants ask the Court to order the government to produce discovery that is required under Rule 16, *Brady*, and the U.S. Constitution. ECF 99, pp. 5-8. Defendants allege that the government has not provided relevant evidence regarding the defendants' assaults on and statements made to officers, footage of defendants' contact with officers inside the Capitol, all police communications within or in in proximity to the Capitol building, defendants' social media information, and information regarding government surveillance of January 6 defendants. ECF 99, p. 6.

Defendants' allegations fail, at the outset, because they ignore the voluminous and comprehensive discovery that has been provided to defendants—and all other defendants in January 6 cases—through Global Discovery. As of January 26, 2024, more than 7.96 million files (over 10.12 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 836 digital devices and 454 Stored Communications Act accounts; 11,990 FBI "FD-302" reports and 30,333 related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 528 digital recordings of subject interviews; and 210,537 (redacted or anonymous) tips. In

---

(D.D.C. 2021) (Kelly, J.); *United States v. Montgomery*, 21-cr-46, 578 F. Supp. 3d 54 (D.D.C. 2021) (Moss, J.); *United States v. Mostofsky*, 21-cr-138, 579 F. Supp. 3d 9 (D.D.C. 2021) (Boasberg, J.); *United States v. Caldwell*, 21-cr-28, 581 F. Supp. 3d 1 (D.D.C. 2021) (Mehta, J.); *United States v. Sandlin*, 21-cr-88, 575 F. Supp. 3d 16 (D.D.C. 2021) (Friedrich, J.).

addition, over 32,000 files including body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies have been shared with the defense via the evidence.com video repository.  Furthermore, with limited exclusions such as evacuation footage and cameras depicting certain sensitive areas, the government has provided to the defense access to all exterior USCP camera footage as well as interior Capitol and CVC footage on January 6 from noon to 8 p.m.  And the government has produced the radio transmissions for multiple law enforcement agencies that responded on January 6, 2021.  *See* ECF 29, p. 1.

This material—to which defendants and their counsel have had access since early 2022, *see* ECF 29, pp. 3-4—covers virtually all of the category of information identified in the defendants' discovery motion, which appears to relate principally to body-worn camera footage and police communications. ECF 99, p. 6; 99-1, Ex. 3.  For that reason alone, defendants' vague discovery allegations should be rejected.

Furthermore, and in any event, in addition to Global Discovery, the government has reproduced body-worn camera footage through case-specific discovery.   The government produced body-worn camera footage from MPD officers that showed the defendants' contact with officers on at least four separate occasions—in December 2021, June 2023, December 2023 and March 2024.  Further, to the extent the defendants timely identify a specific MPD officer (by name or badge number) whose body-worn camera the defense is specifically interest in, the government remains willing to help the defense locate the specific officer's body-worn camera footage.  The government's past, present, and ongoing efforts vastly exceed what is required by statute, applicable discovery rules, and the Constitution.

Defendants nonetheless complain that the government has "inundated" them with "useless information and sent on a fishing expedition." But these conclusory assertions lack merit. As explained, the government has produced all relevant information in an organized and comprehensive manner through Global Discovery. The government produced analytical and mapping tools to assist defense teams in identifying video files—including body-worn camera footage—considered relevant in specific cases through Global Discovery. *See* ECF 29, pp.3-4. The government provided an index that described the files in each Global Discovery Volume. And the government has provided discovery targeted to these particular defendants through case-specific discovery. Again, this case-specific discovery has included (re)production of U.S. Capitol Police CCV, MPD body-worn camera footage and open-source videos that directly show defendants as they engaged with officers and other rioters on January 6, 2021. Beginning in December 2021, the government has provided U.S. Capitol Police CCV footage from the specific camera locations and at the specific times the defendants were inside or outside the Capitol. In particular, this includes all relevant U.S. Capitol Police CCV footage between when the defendants entered the building, at approximately 2:13 p.m., to when the defendants exited the building, at approximately 2:16 p.m. The government also provided defendants with body-worn camera footage and open-source videos that show defendants and their actions at the Capitol. The MPD body-worn camera footage provided by the government includes time-stamped video clips that showed defendants as they confronted specific MPD officers. In September 2023, the government provided defendants with over forty open-source videos. And the government produced an FBI report that identified the specific times that defendants appeared in almost all of these open-source videos.

Defendants also separately contend that the government has not provided copies of their social media accounts. ECF 99, p. 6-7. This allegation, too, is incorrect. The government obtained

copies of the defendants' Instagram accounts through legal process.  The government provided copies of the defendants' Instagram returns to defendants on December 21, 2021, including three Instagram accounts named "BOBTHEPLUMBR1982", "GREGG54321" and "MATTCPURDY".  In addition, the government reproduced the defendants' Instagram accounts a second time to defendants on March 14, 2024.

Defendants' contention in this respect are particularly misleading.  Contrary to the defendants' suggestions (ECF No. 99 at 6-7), the government's investigation did not result in the defendants being "denied access to [their social media] accounts"—social media accounts that the defendants have not identified in their motion in any event.  And, of course, to the extent defendants are referring to any social media accounts on a private platform, such accounts are not in the possession or control of the government.  As Chief Judge Howell noted, the government's discovery obligations in a criminal case are properly limited to materials that are potentially relevant to a defendant's case in the government's possession or control, and the government is not obliged to acquire materials possessed or controlled by others.  *See United States v. Anthony Williams*, 21-cr-377, ECF No. 108, at 6 (citing *United States v. Meija*, 488 F.3d 436, 444-45 (D.C. Cir. 2006) (rejecting defense argument that government's discovery obligations extended to securing potentially relevant material held by a foreign government)); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (observing that "the government cannot be required to disclose evidence that it neither possesses nor controls"); *United States v. Weisz*, 718 F.2d 413, 436 (D.C. Cir. 1983) (noting that the "duty of disclosure attaches in some form once the [g]overnment has first gathered and taken possession of the evidence in question" (emphasis in original) (quoting *United States v. Brant*, 439 F.2d 642, 644 (D.C. Cir. 1971)).

In sum, none of defendants' vague and underspecified complaints about supposed discovery violations have merit, much less warrant a continuance of the trial set for next month. Defendants have long had access to the discovery they complain about—in some cases for over two years—through global and/or case-specific discovery.  In addition, the events of January 6, 2021, occurred over three years ago, and the defendants were charged over two years ago.  The ends of justice plainly are not served by any further delay in the resolution of this case.

## III.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO RECUSE THE COURT FROM THE CASE

There is no valid basis, under the relevant law and facts, for the Honorable Judge Royce C. Lamberth to disqualify himself in this proceeding.  The defendants appear to seek recusal based on two sets of statements:  first, the Court's statements in judicial proceedings in this and other January 6 cases; and, second, certain (passing) public statements by the Court regarding threats made against the Court and others. ECF No. 99, pp. 1-5 & ECF No. 99-1, Ex. 2.  But none of those statements evidenced any improper bias or prejudgment of the current case.  They therefore do not come close to satisfying the high bar for recusal.  The defendants' motion should accordingly be denied.

### A.   Legal Standard

In their recusal motion, the defendants fail to mention that there is a presumption against recusal, set forth the proper legal standard for judicial recusal, or acknowledge the heightened standard that applies here based on the Court's comments arising from and in the performance of its judicial duties.  As evidenced by the discussion below, the reason for the defendants' omissions is clear: they cannot meet these standards.

Judges take a solemn oath to discharge their duties "faithfully and impartially" by "administer[ing] justice without respect to persons," 28 U.S.C. § 453.  Accordingly, a "judge of

the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).

Absent evidence to the contrary, judges "are presumed to be impartial," *SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010).  Parties seeking to overcome the "presumption against disqualification" must meet a high bar. *Id.* (quoting *Cobell v. Norton*, 237 F. Supp. 2d 71, 78 (D.D.C 2003)).  Thus, when a defendant, as here, moves to disqualify a federal judge on the ground that her "impartiality might reasonably be questioned" under 28 U.S.C. § 455(a), he may not rely on "conclusory, unsupported or tenuous allegations," but must provide "clear and convincing evidence," which a court should "scrutinize[] with care." *United States v. Nixon*, 267 F. Supp. 3d 140, 147 (D.D.C. 2017).  "[A] judge once having drawn a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges." *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981); *see also Bryce v. Episcopal Church in the Diocese of Col.*, 289 F.3d 648, 659 (10th Cir. 2002) ("[A] judge also has as strong a duty to sit (quotations omitted)); *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1024, 1025 (D.D.C. 1984).  Indeed, "[i]n the wrong hands, a disqualification motion is a procedural weapon to harass opponents and delay proceedings.  If supported only by rumor, speculation, or innuendo, it is also a means to tarnish the reputation of a federal judge." *United States v. Microsoft Corp.*, 253 F.3d 34, 108 (D.C. Cir. 2001) (en banc) (per curiam).

For these reasons, the D.C. Circuit has stated that the "extraordinary" relief of recusal should not be "lightly granted." *United States v. Trump*, Case No. 23-257 (TSC), 2023 WL 6284898, at * 4 (D.D.C. 2023), citing *United States v. Pollard*, 959 F.2d 1011 1023 (D.C. Cir. 1992).  "In evaluating a motion for disqualification, courts in this district begin with the

presumption that judges are impartial, then consider whether the movant's asserted grounds for recusal meet the statutory requirements." *See e.g., Nixon*, 267 F. Supp. 3d at 147, *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010); *Cobell v. Norton*, 237 F. Supp. 2d 71, 78 (D.D.C. 2003). "The standard for disqualification under § 455(a) is an objective one. The question is whether a reasonable and informed observer would question the judge's impartiality." *Microsoft Corp.*, 253 F.3d at 114.

The question under Section 455(a) is whether a judge's impartiality might "reasonably" be questioned, which is assessed from "the perspective of a fully informed third-party observer who understands all the relevant facts and has examined the record and the law," *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (per curiam) (cleaned up), and not from the perspective of a "'hypersensitive, cynical, and suspicious person.'" *Nixon*, 267 F. Supp. 3d at 148 (quoting *Sensley v. Albritton*, 385 F.3d 591, 599 (5th Cir. 2004)). *See Sao Paulo State of Federative Republic of Braz. v. Am. Tobacco Co., Inc.*, 535 U.S. 229, 232-33 (2002) (per curiam); *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 924 (2004) (Scalia, J., in chambers).

To the extent a recusal motion is based on statements made by a judge during judicial proceedings in response to facts and arguments placed before him, recusal is warranted "only in the rarest circumstances" where the statements "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). This higher standard for recusal based on such "intrajudicial" statements—that is, statements made by a judge while he is doing his job—because a judge's core judge's core duties include reviewing facts, responding to parties' arguments, and forming opinions, all while maintaining neutrality and fairness. *See Liteky*, 510 U.S. at 544-54 (describing that a judge may become "exceedingly ill disposed" toward a defendant after hearing evidence about him, but not be "recusable for bias or

prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings"). Accordingly, the Supreme Court has held that where a recusal motion rests on statements made in a judicial setting and reflect "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," recusal will be warranted "only in the rarest circumstances" where the comments "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. at 555. After all, "opinions held by judges as a result of what they learned in earlier proceedings" are "normal and proper," and "not subject to deprecatory characterization as 'bias' or 'prejudice.'" *Id*. at 551; *see Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) ("The high bar set by *Liteky* for predispositional recusals makes good sense. If it were otherwise—if strong views on a matter were disqualifying—then a judge would hardly have the freedom to be a judge.").

This higher standard applies equally when a court's intrajudicial statements were made in separate proceedings, including proceedings in which the defendant was not a party. The D.C. Circuit made this clear in its decision in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) (en banc). There, defendants sought recusal of the judge presiding over numerous, separate Watergate-related matters, in part based on statements the judge had made during an earlier, separate trial in which, among other things, he "expressed a belief that criminal liability extended beyond the seven persons there charged." *Id*. at 131-32 & n.293. The Circuit found that recusal was not warranted because the grounds for the claim were "judicial acts" including "prior judicial rulings . . . or the exercise of related judicial functions." *Id*. at 133-34. The Circuit further stated that the "disabling prejudice" necessary for recusal "cannot be extracted from dignified though persistent judicial efforts to bring everyone responsible for Watergate to book." *Id*.

A fundamental component of "[t]he rule of law . . . is that what a judge learns in his judicial capacity whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification." *United States v. Bernstein*, 533 F.2d 775, 784-85 (2d Cir. 1976) (recusal unwarranted where judge, in handling multiple indictments of various coconspirators, made intrajudicial statements during previous plea colloquies and sentencings, including that the scheme at issue was "terrible" and that he was "sure this conspiracy has cost society millions of dollars . . . You cannot close your eyes to these things."); *see also Obert v. Republic W. Ins. Co.*, 398 F.3d 138, 145 (1st Cir. 2005) (rejecting recusal motion where the judge's "comments were based on what he had learned in presiding over related litigation," and explaining that "[t]he law is well settled that, absent quite unusual circumstances, a judge cannot be recused for views formed on the basis of what he learned in court"); *United States v. Thirion*, 813 F.2d 146, 154-55 (8th Cir. 1987) (rejecting recusal motion, where, at the sentencings of co-defendants, the judge described Thirion—who was at the time a fugitive and had not made an initial appearance—as "the most culpable," and his conduct "considerably greater than the criminal conduct of any of the defendants here on trial" because he "got most of the money and got a disproportionate amount of the money that was obtained from the victims."); *United States v. Wedd*, 993 F.3d 104, 116-117 (2d Cir. 2021) (district court's intrajudicial comments in the context of co-defendant's impending sentencing were no basis for recusal because a judge "cannot be said to have manifested partiality simply by expressing a view of a particular defendant's culpability based on information that has been presented to the court").

Given the demanding standard for recusal based on intrajudicial comments, a judge's in-court statements based on courtroom proceedings almost never give rise to recusal. Rather, cases

where courts have granted recusal motions based on such statements "tend to involve singular and startling facts." *Belue*, 640 F.3d at 573.  In one such example, *Berger v. United States*, the judge presiding over an espionage trial against German-American defendants stated in court, "If anybody has said anything worse about the Germans than I have I would like to know it so I can use it. . . . One must have a very judicial mind, indeed, not to be prejudiced against the German-Americans in this country.  Their hearts are reeking with disloyalty." 255 U.S. 22, 28 (1921).  In *United States v. Antar*, when the district judge stated at sentencing, "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others," he made clear "in stark, plain and unambiguous language. . . that his goal in the criminal case, from the very beginning, was something other than what it should have been and, indeed, was improper." 53 F.3d 568, 573, 576 (3d Cir. 1995), overruled on other grounds by *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001).  Finally, in S*entis Grp., Inc. v. Shell Oil Co.*, the Eighth Circuit found recusal appropriate where the judge "directed profanities at Plaintiffs or Plaintiffs' counsel over fifteen times" and refused to allow the plaintiffs to present argument at a sanctions hearing. 559 F.3d 888, 904-05 (8th Cir. 2009). *See Belue*, 640 F.3d at 573 (citing *Berger*, *Antar*, and *Sentis Group* and noting that "[s]imilar examples are, thankfully, not easy to find").

On the other side of the ledger are countless cases in which recusal based on judicial comments was deemed unwarranted—even based on comments that, unlike this Court's comments on which the defendants base their motion, directly criticize a defendant.  For instance, recently in this District, a judge told a defendant at a hearing, "Arguably, you sold your country out. . . . I'm not hiding my disgust, my disdain for this criminal offense." *In re Flynn*, 973 F.3d 74, 83 (D.C. Cir. 2020) (en banc) (per curiam).  The D.C. Circuit found that these statements did not meet the

*Liteky* test, stating, "the District Judge was not simply holding forth on his opinions; rather, each of the statements to which Petitioner objects was plainly made in the course of formal judicial proceedings over which he presided—not in some other context." *Id.*  Similarly, in *United States v. Young*, the Tenth Circuit rejected a defendant's request for disqualification where the judge opined on the defendant's "obvious" guilt, predicted that she would "get convicted" at trial, and speculated that she would sooner subject herself to contempt of court and jail time than cooperate against her co-defendants. 45 F.3d 1405, 1414-16 (10th Cir. 1995).  The Tenth Circuit held that the judge's comments did not indicate "an opinion based upon knowledge gathered outside of the course of judicial proceedings," and that, "considered in context," they did not "'display a deepseated . . . antagonism that would make fair judgment impossible.'" *Id.* at 1415 (quoting *Liteky*); see also *id.* at 1415-16 (elaborating that the judge's comments did "not show that the judge could not possibly render fair judgment" or "indicate[ ] that the judge was unable or unwilling to carry out his responsibilities impartially"). *See also United States v. Allen*, 587 F.3d 246, 250-53 (5th Cir. 2009) (per curiam) (judge did not need to recuse from civil tax matter even though he directed the government to initiate criminal contempt charges against the defendant and said defendants were "in criminal contempt as far as [he was] concerned"); 13D Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3549 nn.23 & 32 (3d ed. 2023) (collecting cases where recusal was denied).

None of the Court's statement—neither the statements made in this and other cases, or the statements made outside of judicial proceedings—meet the threshold requirements for recusal. Defendants' motion should be denied.

B.    **The Court's Statements During Judicial Proceedings Were Appropriate and
Do Not Warrant Recusal.**

Defendants allege that the Court made "hostile" statements to the defendants at a recent status conference.  ECF No. 99 at 2.  They also take issue with certain statements made by the Court in other January 6 cases.  *Id.* at 2-4.  In fact, the Court's words were measured, appropriate responses to the arguments presented to the Court in those cases.  They do not come close to the meeting the high bar for recusal.

Begin with the defendants' allegations regarding statements made by the Court *in this case*. At a status hearing on February 29, 2024, defendants' current counsel sought to further delay the defendants' trial on account of the fact that she had recently applied for a state judgeship in Alabama.  The defendants complain that, in response, the Court asked why defense counsel had agreed to represent the defendants when defendants had previously been represented by three CJA counsel if she was under consideration for a judgeship—at which point defense counsel stated that she entered into the case prior to applying for the judgeship and the Court set the trial for April 2024.  Defendants conclusorily label the Court's inquiry as "hostile."

In fact, the Court's response was reasonable—indeed, entirely appropriate—under the circumstances.  The defendants were indicted in January 2022, and the three defendants had previously been represented by separate counsel.  In August 2023, the defendants indicated that they wanted to retain a single counsel, Ms. Isaak, to represent all three defendants.  Prior to allowing the former individual defense counsel to withdraw, the Court undertook an extensive conflict inquiry over multiple hearings with defendants to determine if they had made a knowing waiver of any conflicts of interest arising from joint representation by one counsel.  On December 18, 2024, after this review, the Court granted the motions to withdraw filed by former individual defense counsels and Ms. Isaak was the sole counsel for the three defendants.  At the February 29

status hearing, the Court proposed a trial date of April 22, 2024, almost two months after the status hearing.  In this context, the Court's statements to defense counsel at the hearing were reasonable.  The Court's statements reflect the Court's concern with the progression of this case, not any specific bias or prejudice toward the defendants.  Viewed from an objective person's point of view, the Court's statements were a reasonable response and consistent with the Court's role in ensuring the case was not unnecessarily delayed.  The Court's statements therefore did come close to meeting the high threshold required for recusal.[5]

The defendants' reliance on statements cherry-picked from the Court's other January 6 cases is even farther afield.  Without exception, those statements—which the Court plainly made while discharging its core judicial responsibilities—reflected the Court's responses, as required by law, to arguments made by other parties in those cases.  Those responses, moreover, were plainly appropriate, especially considering that they were, by and large, directed at improper attempts by other defendants to minimize or misrepresent their actions on January 6, 2021, at the Capitol.  *See, e.g.*, *U.S. v. Little*, No. 1:21-cr-315-RCL, 2024 WL 386718, * 2-3 (D.D.C. Jan. 25, 2024) (in a re-sentencing hearing, the Court weighed the § 3553 factors and the defendant's actions on probation, including evidence the defendant made posts on social media posts that showed a clear lack of remorse, and refusal to take responsibility for his actions on January 6); *U.S. v. Munchel*, 521 F.Supp.3d 54, 61 (D.D.C Feb. 17, 2021) (the Court cited President Washington's farewell address in consideration of a motion for pre-trial n when the Court weighed the nature and circumstances

---

[5] Oddly, the defendants refer to the "opin[ion]" by another attorney (Larry Klayman) that the Court's statement at the February 29 status conference was "uncharacteristic" of the Court but consistent with the "Court['s] . . . hostil[ity] to January 6 defendants."  Suffice to say that Mr. Klayman is not a disinterested observer.  He represents defendants Gregory Purdy, Matthew Purdy and Robert Turner, along with other individuals, in a *Bivens* action filed in the Northern District of Florida against the FBI, the U.S. Department of Justice and others.  *See Jesus Rivera, et al v. Federal Bureau of Investigation, et al*, case number 3:23-CV-24547-TKW-HTC.

of the charges). The defendants have therefore failed to demonstrate that the Court has "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

In addition, the defendants omit important context about the statements made by the Court at the status hearing, and the statements by the Court in the cases involving other January 6 defendants. This Court, like all courts in this District, has presided over dozens of criminal cases related to January 6. And this Court, like all courts in this District, gained knowledge about the events of January 6 and insight about the persons charged based on its daily administration of these cases. The defendants' motion, however, says virtually nothing of the context in which the assertedly "hostile" comments were made. It fails to identify when the statements were made or the identity of the specific defendants. It fails to describe the type of hearing where the statements were made, including whether the statements were made at a sentencing hearing or otherwise. And it fails to identify any specific issues that the Court was addressing at these hearings, and how the Court's statements reflected the specific evidence and issues that were under consideration.

### C.     Recusal is Not Warranted Due to the Court's Statements Not Made During Judicial Proceedings.

Defendants further point to the Court's statements, reported in certain news, articles about threats that had been made to the judiciary in the context of the January 6 cases, including death threats made by other individuals towards this Court and other members of the Judiciary. The statements are not alleged to have been made by defendants in this case. ECF 99, pp. 4-5, ECF 99-1, Ex. 2.

The defendants have not overcome the presumption that the Court is impartial. Threats to the Judiciary are extremely serious matters that are—and must be—addressed decisively. But the fact that a member of the Judiciary has received a death threat—or that he has made a public

statement about it—does not, without more, provide a sufficient basis to *require* that judge's recusal.  If that were the standard, after all, it would create a perverse incentive for those who want to delay or manipulate the judicial process by removing particular judges in particular cases.  Nor do the Court's measured statements at issue here otherwise imply a bias by the Court towards these or any other specific January 6 defendants.  At bottom, nothing in the defendants' motion suggests that the Court is unable to distinguish between threats made by other individuals and the Court's role in this case.  As such, defendants have not met the heavy burden required to warrant the extraordinary relief of recusal.

## **CONCLUSION**

For the reasons stated herein, the government respectfully requests that this Court deny the defendants' Omnibus Motion in its entirety.

<div style="margin-left:40%">

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Lynnett M. Wagner*
LYNNETT M. WAGNER
Nebraska Bar No. 21606
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (402) 661-3700
Email: lynnett.m.wagner@usdoj.gov

*/s/ Kyle M. McWaters*
KYLE M. MCWATERS
Assistant United States Attorney
DC Bar No. 241625
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.20579
Phone: (202) 252-6983
Email: Kyle.McWaters@usdoj.gov

</div>