UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 22-cr-19 (RCL) |
| v. | : | |
| | : | |
| GREGORY RICHARD PURDY, JR., | : | |
| MATTHEW PURDY, and | : | |
| ROBERT TURNER, | : | |
| | : | |
| Defendants. | : | |

### UNITED STATES' REPLY TO OPPOSITION TO ITS MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF EVIDENCE REGARDING SENSITIVE, SECURITY-RELATED TOPICS

On March 11, 2024, the government filed a motion *in limine* to preclude admission of evidence regarding sensitive, security-related topics. ECF 100. Specifically, the government seeks to preclude evidence or argument concerning (1) the exact locations of U.S. Capitol Police ("USCP") security cameras and (2) the protocols of the U.S. Secret Service ("USSS"). ECF 100 ("Gov't Mot.").

On March 25, 2024, defendants filed a response to the government's motion *in limine* to preclude admission of evidence regarding sensitive, security-related topics. ECF 109, 112. In their response, defendants did not contest the government's motion *in limine* with respect to USCP security camera locations. Therefore, the government respectfully requests that the Court grant the government's motion *in limine* regarding USCP security cameras as unopposed.

This Court should also grant the government's motion *in limine* regarding the cross-examination of USSS witnesses. In other January 6 cases, both this Court and other judges of this District have routinely granted the exact same modest limitations that the government is requesting in this case. *See, e.g.*, *United States v. Grillo*, 1:21-cr-690 (RCL), Minute Entry (D.D.C. Nov. 17, 2023) (granting Government's motion *in limine* regarding USSS testimony); *United States v.*

*Harkrider*, 1:21-cr-117, Minute Entry (D.D.C. Dec. 21, 2023) (same); *United States v. Johnatakis*, 1:21-cr-91 (RCL), Minute Entry (D.D.C. Nov. 15, 2023) (same); *United States v. Azari, et al*, Case No. 1:23-cr-251 (RCL), ECF 38 (D.D.C. Oct. 30, 2023) (same); *see also United States v. Baez*, Case No. 1:21-cr-507 (PLF), ---F.Supp.3d---, 2023 WL 6364648, at *6 (D.D.C., Sept. 29, 2023); *United States v. Barnett*, Case No. 1:21-cr-38 (CRC), Minute Entry (D.D.C. Jan. 4, 2023); *United States v. Reffitt*, Case No. 1:21-cr-32 (DLF), Minute Order (D.D.C. Jan. 20, 2022).

Nothing the defendants argue in their cursory response in this case (ECF 109, pp. 2-3) warrants a different result. Specifically, the defendants seek a broad inquiry at trial into a number of security-related topics, including but not limited to the specific location of the Vice President and other protectees on January 6; what the Vice President or protectees could see or hear; and the precise number of rooms, walls, spaces or barriers that separated the Vice President from defendants. ECF 109, p. 2. But those arguments largely rehash arguments that other January 6 defendants have already pressed, unsuccessfully, in opposing identical motions *in limine*. Like analogous arguments made in other January 6 cases, the defendants' assertions fail for a simple reason: they do not substantiate that revealing those details about the USSS protocols would create a defense to the charges. Accordingly, the Court should grant the government's motion in its entirety.

**ARGUMENT**

As noted in the government's motion (ECF No. 100), the court may exclude testimony about sensitive information if the evidence is irrelevant or if its probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, or misleading the jury. *See* Gov't Mot. at 2-3. In response, the defendants declare, without meaningful explanation, that cross-examination of the USSS witness regarding sensitive aspects of the USSS protocols at issue would

not "jeopardize Capitol security, national security or the ability of the Secret Service to guard protectees." ECF 109, p. 2.  Their assertions are both incorrect and unavailing.  Here, the evidence at trial will show that Vice President Pence was going to visit the Capitol on January 6, as required by law, *see* U.S. CONST. art. I, § 3, cl. 4 (defining the Vice President as the President of the Senate); 3 U.S.C. § 15 (requiring the President of the Senate to preside over a joint session of Congress convened on January 6 to count the votes of the electoral college); that the Vice President did so; and that when rioters entered the Capitol Building, the U.S. Secret Service relocated the Vice President to a secure location within Capitol grounds to protect him. There can therefore be no serious question that the precise location to which the U.S. Secret Service moved the Vice President—let alone specific details about the Secret Service's protocols at the Capitol—are sensitive information implicating national security concerns.

In response, the defendants identify several areas of inquiry that, they claim, they must be allowed to pursue. But the defendants' reliance on those areas of inquiry suffers from one of two fatal defects (or both): (1) many of those areas have no relevance to any of the issues properly before the jury on the charges; and (2) the few areas that have some plausible relevance are a red herring at this stage because they do not implicate the relief sought by the government in this motion *in limine*.

The indictment charges defendants with multiple offenses, but the only offenses relevant here are the violations of 18 U.S.C. § 1752 alleged in Counts Four, Five and Six.  Those provisions require, in relevant part, proof that the defendant entered, remained, or committed other culpable acts in a "restricted building or grounds," 18 U.S.C. § 1752(a)(1), (2)—a phrase that the statute defines as "any posted, cordoned off, or otherwise restricted area of a building or grounds where .

. . person[s] protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

Under the plain meaning of the statute's text, many of the areas of inquiry most prominently featured in the defendants' response will be inadmissible for a simple reason: they do not make it any more or less likely that the Vice President was within the "building or grounds" subsuming the restricted area during the relevant time period, as required under the statute. *See* Fed. R. Evid. 401. And any vanishing probative value from those lines of inquiry would be substantially outweighed by the risk of undue prejudice and confusing the issues.

A cursory review of the primary areas of inquiry identified by the defendants confirms their irrelevance. For example, the defendants want to quiz potential USSS witnesses on "[w]hether anything defendants did exposed the Vice President to any danger"; on "[h]ow far away was the Vice President or protectees from defendants"; on whether "the Vice President or protectees [could] see or hear defendants"; and on "[h]ow many rooms, walls, spaces, or barriers separated the Vice President from defendants." (ECF No. 109 at 2). But nothing in Section 1752 requires proof that the defendants (or, for that matter, any other individual) *personally endangered* a Secret Service protectee—the issue to which the defendants' questions appear to allude. The only questions properly before the factfinding under Section 1752 are: (1) whether the area was "posted, cordoned off, or otherwise restricted"; (2) whether a Secret Service protectee was or would be temporarily visiting the building or grounds subsuming the restricted area; and (3) whether the defendants knowingly entered in the restricted area, remained in the restricted area, and/or engaged in prohibited conduct in the restricted area. None of the defendants' areas of inquiry listed above tend to make any of those facts more or less likely. They therefore fail the basic relevance test under the Rule of Evidence. *See* Fed. R. Evid. 401. At a minimum, whatever vanishing probative

value one might hypothesize is significantly outweighed by the dangers of (i) undue prejudice to the Secret Service's paramount interest in maintaining effective protocols for relocating protectees and their motorcades at the Capitol when emergencies occur; and (ii) confusing the issues before the jury.

The remaining areas of inquiry identified by the defendants (ECF No. 109 at 2) are also unavailing, but for a different reason: they are simply outside the purview of the relief sought by the government in this motion *in limine*. The defendants complain that they want to ask potential USSS witnesses questions about "[w]hat role . . . defendants play[ed], if any, in disrupting or changing events of January 6, 2021; "[w]hat signage, flyers, or other indicators might have indicated any restrictive status to defendants"; "[w]hat staffing or officers was present to indicate any restrictions to defendants"; "[t]he appearance, circumstances, and setting experienced by defendants"; "[i]f areas were restricted, what process was followed?"; "[w]ho has or claims authority to restrict areas?"; "[w]ho can end or lift restrictions? What is the process?"; and "[i]f barriers or signage was erected, when and how were such barriers or signage moved?" Contrary to the defendants' apparent premise, the relief sought by the government would not, by its terms, prohibit asking these questions. The reason is obvious: none of these questions implicates the two carefully defined areas identified in the government's motion *in limine* in the first place: (1) the "Secret Service protocols *related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur*" (emphasis added); and (2) the "[d]etails about the nature of Secret Service *protective details*, such as the number and type of

agents the Secret Service assigns to protectees" (emphasis added).  The defendants' reliance on these potential questions is, therefore, a red herring.[1]

The protocols of the USSS have little to no probative value, but the disclosure of these protocols would compromission significant security interests if needlessly disclosed to the public.  The security risk of revealing the specific location of the Vice President and other protectees, and the protocols used by the USSS to protect the Vice President, are clearly matters of national security.  These security concerns outweigh any minimal interest that defendants have in the information.

## CONCLUSION

For the reasons set forth herein and in the government's motion *in limine*, the government respectfully requests that this Court grant the government's motion *in limine* in full.

---

[1] Lest there be any confusion, the defendants' questions listed in this paragraph may be objectionable on other grounds, including (but not limited to) relevance, Rule 403, and lack of foundation.  But the Court need not resolve those potential objections to adjudicate this motion *in limine*.  For purposes of this motion, it is sufficient that those questions do not implicate the relief sought in the government's motion in the first place.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Lynnett M. Wagner*
      LYNNETT M. WAGNER
      Nebraska Bar No. 21606
      Assistant United States Attorney
      601 D Street, N.W.
      Washington, D.C. 20530
      Tel: (402) 661-3700
      Email: lynnett.m.wagner@usdoj.gov

      Kyle M. McWaters
      D.C. Bar No. 481052
      Assistant United States Attorney
      (202) 252-6983
      Kyle.McWaters@usdoj.gov