IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 22-cr-19-001 (RCL) |
| GREGORY RICHARD PURDY, JR., MATTHEW PURDY, and ROBERT TURNER, | |
| Defendants. | |

### UNITED STATES' RESPONSE TO DEFENDANT GREGORY RICHARD PURDY, JR.'S MOTION TO DISMISS INDICTMENT FOR SPEEDY TRIAL VIOLATION

### INTRODUCTION

The United States, by and through the undersigned Assistant U.S. Attorneys, respectfully asks this Court to deny Defendant Gregory Richard Purdy, Jr.'s ("Purdy") Motion to Dismiss Indictment for Speedy Trial Violation ("Motion to Dismiss"), ECF 123.

Purdy brings this motion to dismiss alleging violations of the Speedy Trial Clause of the Sixth Amendment and the Speedy Trial Act ("STA" or "Act"), codified at 18 U.S.C. §§ 3161-74. ECF 123, p. 5.

The United States of America respectfully opposes Purdy's Motion to Dismiss.

### BACKGROUND AND PROCEDURAL HISTORY

On January 6, 2021, Purdy entered the restricted area of the U.S. Capitol grounds, entered the U.S. Capitol Building, and eventually ended up on the West side of the U.S. Capitol Building, on the Upper West Terrace. At approximately 3:24 p.m., Purdy stood directly opposite of a line of Metropolitan Police Department ("MPD") officers and in front of a large group of rioters. *See* Figure 1). The MPD officers prevented the rioters from re-entering the Upper West Terrace, on the West side of the Capitol. Purdy is recorded on MPD Body Worn Camera (BWC) saying to the

officers: "We're on the same team. You don't have to take these orders." Purdy later said to the officers, "Are you guys going to let us in, or are we gonna have to push in?" At various times, Purdy turned back to the crowd of rioters and appeared to wave others in the crowd behind him to move forward. At approximately 3:30 p.m., Purdy yelled to the crowd, "Guys, we all gotta go at once." With raised hands, Purdy then counted down from ten to one; upon reaching one, Purdy ran forward into an MPD Officer and pushed his way past the police line.  *See* Figure 2).



*Figure 1, Gregory Purdy (circled in red), on Upper West Terrace opposite MPD Officers*



*Figure 2, Gregory Purdy pushing into MPD Officer*

2

At approximately 3:31 p.m., several MPD officers chased Purdy and restrained him. MPD Officer O.A. restrained Purdy using handcuffs, then replaced the cuffs with a zip tie. Purdy was escorted by MPD Officer O.A. into the U.S. Capitol Building. Along with another rioter and other officers from MPD and U.S. Capitol Police, Purdy was escorted through the U.S. Capitol building and the Rayburn Building, one of the office buildings for the U.S. House of Representatives. The group—which consisted of a U.S. Capitol Police Officer, at three MPD officers, Purdy and one other detainee — reached an outdoor entrance of the Rayburn Building at approximately 3:49 p.m. Once there, Purdy stood next to a column. *See* Figure 3. Another U.S. Capitol police officer arrived a few minutes later.



*Figure 3, Purdy (circled in red) outside the Rayburn Building.*

At approximately 4:06 p.m., after MPD and U.S. Capitol Police officers had discussed potential next steps with Purdy and the other rioter who had been detained, MPD Officer A.W. stated to Purdy and the other detainee:

> Alright, so this is the deal, okay. You've been detained. Do you have any
> medical emergencies. Okay. So go ahead and stand up for me. Capitol Police is
> not going to process your arrest for crossing the police line, so today is your lucky

day. Okay. Don't come back. Just take a walk somewhere. Go back to your hotel, get yourself together. Okay.

At approximately 4:11 p.m., the MPD Officers removed the zip ties from Purdy, and he was released along with the other rioter. *See* Figure 5. At no point did Purdy provide the officers with his name, address or other identifying information.



*Figure 5, Purdy after his release*

After removing the zip ties, MPD Officer A.W. and Purdy had the following conversation:

>   Officer A.W.   We got your picture, we didn't get your information, right? But we got your picture. Don't, don't jeopardize it. Alright, cause you're really getting a break here, alright.
>
>   Purdy:        No, honestly, you guys are my heroes.
>
>   Officer A.W.   Listen go with him, so he can find some shoes. Go that way. See you guys.

On January 6, 2021, no arrest warrant was ever issued for Purdy, nor were any state, D.C., or federal charges ever filed against Purdy. Furthermore, on January 6, 2021, Purdy was not processed for any offense. Purdy was not transported to or booked into jail, and he was not fingerprinted or otherwise required to produce identification. Purdy was not made to appear before a magistrate judge in the District of Columbia or required to post a bond.

Approximately ten months later, on November 3, 2021, Purdy was charged by criminal complaint in federal court. ECF 1. The charges in the complaint were Civil Disorder in violation of 18 U.S.C. § 231(a)(3), Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). An arrest warrant was issued for Purdy based on the charges in the criminal complaint (ECF 5), and Purdy was arrested on the warrant a week later, on November 10, 2021, in New Windsor, New York. ECF 6, p. 1. Purdy was released on bond with conditions. ECF 6, pp. 35-41.

The following week, Purdy had an initial appearance with Magistrate Judge Robin M. Meriweather in the District Court for the District of Columbia and was released on conditions. ECF 12. At the initial appearance, the Court set a status hearing for January 27, 2022, and excluded the time under the Speedy Trial Act from November 18, 2021, to January 27, 2022. Minute Entry dated November 18, 2021.

On January 14, 2022, the grand jury returned an indictment charging Purdy with the following offenses based on his conduct at the United States Capitol on January 6, 2021: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); Entering and Remaining in a Restricted Building or Grounds,

in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F), and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

In the present motion, Purdy argues that the indictment should be dismissed on statutory and constitutional speedy trial grounds.

**ARGUMENT**

I.  DEFENDANT PURDY'S CLAIM UNDER THE SIXTH AMENDMENT'S SPEEDY TRIAL CLAUSE LACKS MERIT BECAUSE HIS SIXTH AMENDMENT RIGHT DID NOT ACCRUE UNTIL FORMAL CRIMINAL CHARGES WERE INSTITUTED

　　A.　Legal Standard

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has repeatedly held that "the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution." *Doggett v. United States*, 505 U.S. 647, 655 (1992). Thus, to establish a violation of the Sixth Amendment right to a speedy and public trial, a defendant must show first that, at the relevant time, he was an "accused"—*i.e.*, that a formal criminal prosecution had commenced.

　　B.　Purdy's Sixth Amendment right to speedy trial did not accrue on January 6, 2021, because no formal criminal charges were instituted.

The defendant Purdy alleges his right to a speedy trial under the Sixth Amendment was violated because of his arrest on January 6, 2021. However, the speedy trial clause of the Sixth Amendment does not apply to the period before Purdy was indicted, arrested, or otherwise officially accused. No Sixth Amendment right to a speedy trial arises until charges are pending.

In *United States v. Marion*, the Supreme Court addressed whether the defendants' Sixth Amendment right to a speedy trial was violated by a three-year period between the end of the charged conduct and the return of the indictment. The Supreme Court found:

> On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the court of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discovery, investigate, and accuse any person within any particular period of time. The amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him.

*United States v. Marion*, 404 U.S. 307, 313 (1971). In Purdy's case, he was not charged or accused in court with prosecution on January 6, 2021. Therefore, the Sixth Amendment speedy trial provision did not apply to the period of time between January 6, 2021 and January 14, 2022, when an indictment was returned against Purdy.

In *United States v. MacDonald*, the Supreme Court found that "[a] literal reading of the Amendment suggests that this right attaches only when a formal criminal charge is instituted and a criminal prosecution begins." *United States v. MacDonald*, 456 U.S. 1, 6 (1982). This case involved a defendant who was charged with three murders and confined by the U.S. Army. After an investigation, the military charges were dismissed. However, an investigation continued and – more than four years after the military charges were dismissed – the defendant was charged in a federal indictment with the three murders. The defendant moved to dismiss the civilian charges, invoking the Speedy Trial Clause, and the Court of Appeals for the Fourth Circuit held that the criminal charges were pending against the defendant during the entire period between his military arrest and his later indictment on civilian charges. The Supreme Court disagreed, holding that "during the intervening period, MacDonald was not under arrest, not in custody, and not subject

7

to any 'criminal prosecution'" and he was "legally and constitutionally in the same posture as though no charges had been made." *Id.* at 10.

In *MacDonald*, the Supreme Court noted that "in addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim." However, the Supreme Court found that while "delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statues of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending." *Id.* 456 U.S. at 7 (internal citations omitted). The Supreme Court found "[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* 456 U.S. at 8. The Supreme Court held that "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable." *Id.* 456 U.S. at 8.

In a recent, unreported decision, former Chief Judge Howell addressed whether the filing of a federal complaint charging a felony triggered the Sixth Amendment's speedy trial protections, without an arrest. *United States v. Shalom*, Case No. 19-cr-100 (BAH), 2022 WL 2355417, at *4 (D.D.C. 2022). The Court found that a complaint did not trigger the speedy trial protections. In that decision, the Court described the Supreme Court decisions that defined when the right to speedy trial under the Sixth Amendment attached. The Court found that the Supreme Court identified two types of events that trigger the Sixth Amendment's speedy trial protections: "(1) the filing of an 'indictment, information, or other formal charge' or (2) the public accusation occasioned by the arrest of a defendant who is then held to answer a criminal charge". *United States v. Shalom*, 2022 WL 2355417, at * 4 (*citing Marion*, 404 U.S. at 321). The Court found

8

that "unlike an arrest, the mere filing of a criminal complaint does not require that a defendant immediately be brought before a judicial officer and held to answer for any charges." *Id*. at *5.

This case follows *a fortiori*. Purdy was not charged with or accused in court of any offense at all until, at least, November 10, 2021. There was no arrest that required the officers to bring Purdy before a judicial officer. Purdy did not provide officers with his name, address or other identifying information that would be documented if he had in fact been arrested and charged with a crime. Instead, the officers released Purdy and told him that the officers were "not going to process your arrest for crossing the police line". The officers' detention of Purdy on January 6, 2021, did not mark the commencement of formal criminal charges, as required to trigger the Sixth Amendment's speedy trial protections.

II.     PURDY'S CLAIM UNDER THE SPEEDY TRIAL ACT LACKS MERIT

   A.     Legal Standard

The Speedy Trial Act (the "Act"), 18 U.S.C. § 3161(b), provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. . .

18 U.S.C. § 3161(b). The Act defines "offense" as "any Federal criminal offense". 18 U.S.C. § 3172. The Act excludes certain periods of time from the time of indictment until trial. 18 U.S.C. § 3161(h). The sanction for a violation of section 311(b) of the Act is set forth in 18 U.S.C. § 3162(a)(1), as follows:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped . . .

18 U.S.C. § 3162(a)(1).

9

B.      The Court Should Reject the Defendant's Speedy Trial Act Claim

Purdy claims that his momentary detention on January 6, 2021, constituted an "arrest" under the Speedy Trial Act that triggered the government's requirement to charge Purdy in an indictment within thirty days, 18 U.S.C. § 3161(b). Specifically, Purdy contends the STA clock began on January 6, 2021, when he was detained and then released, without charges, by the Metropolitan Police Department at the U.S. Capitol. He contends that because the criminal charges were not filed by February 5, 2021, thirty days from January 6, 2021, all charges in the indictment against him should be dismissed. ECF 123, p. 5. Purdy's claim hinges on an implausible reading of the Act—a reading that has been uniformly rejected by the courts that have considered the issue.

A natural reading of the Speedy Trial Act—and the uniform interpretation of the relevant provisions by district courts and courts of appeals around the country—foreclose Purdy's theory. The Speedy Trial Act provisions at issue in this case provide that the information charging an individual with an offense "shall be filed within thirty days from the date on which such individual was *arrested or served with a summons in connection with such charges*." 18 U.S.C. § 3161(b) (emphasis added). The Act defense "offense" as "any Federal criminal offense". 18 U.S.C. § 3172. Thus, the trigger mechanism is the arrest or service of summons "in connection with such charges" which refers to the "offense" charged in the indictment, which must be a federal offense. Thus, the arrest, for purposes of the Speedy Trial Act, "starts the clock only if it is 'in connection with' *federal charges*." *United States v. Mills*, 964 F.2d 1186, 1189 (D.C. Cir. 1992) (en banc), *cert. denied*, 506 U.S. 977 (1992) (holding an earlier arrest on violations of the D.C. Code was not an arrest "in connection with" federal charges that would trigger the 30-day requirement); *see also United States v. Seals*, 130 F.3d 451, 454 (1997) (involvement of federal law enforcement in defendant's arrest, where the arrest was for D.C. Code violations, did not trigger the Speedy Trial Act clock).

10

Further, as the D.C. Circuit also explained, section 3162(a)(1)—which sets the sanctions for violations of the Speedy Trial Act—"also suggests that the Act is triggered only by arrests that are accompanied by the filing of a federal complaint against the defendant. *Mills*, 964 F.2d at 1189; *see also id*. at 1193 (Congress adopted "language in 3161(b) that addresses solely federal complaints and their attendant arrests"). This section provides that for "any individual against whom *a complaint is filed charging such individual with an offense*, no indictment or information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1) (emphasis added). In *United States v. Mills*, the D.C. Circuit found that "[a]s § 3162(a)(1) does not apply where an arrest has occurred but no charges have been filed, the term "arrest" in § 3161(b) "'must be construed as an arrest where the person is charged with an offense.'" *United States v. Mills,* 964 F.2d at 1189, *quoting United States v. Solomon*, 679 F.2d 1246, 1252 (8th Cir. 1982); *United States v. Jones*, 676 F.2d 327, 331 (8th Cir. 1982). Purdy's theory, in contrast, hinges on the exact opposite premise: that his detention constituted an "arrest" for purposes of section 3162(a)(1) even though no charges were brought until approximately 10 months later—indeed, even though, on January 6, Purdy was not processed on any offense, booked into jail, fingerprinted, made to appear before a magistrate judge in the District of Columbia, or required to post a bond.

The consensus of other courts likewise forecloses Purdy's claim. In *United States v. Jones*, the Eighth Circuit addressed a case where federal law enforcement officers detained a defendant, who was released and told he would be "notified." However, charges were not filed until almost ten months later, when an indictment was returned and the defendant was arrested on the indictment. *United States v. Jones*, 676 F.2d 327, 328 (8th Cir. 1982). The Eighth Circuit

11

conducted a review of the Speedy Trial Act, its legislative history, case law and the Federal Rules of Criminal Procedure. *Jones*, 676 F.2d 329-331. The Eighth Circuit held that 18 U.S.C. § 3161(b) "is only applicable when the arrested individual is charged with an offense." *Jones*, 676 F.2d at 329. The Eighth Circuit thus affirmed the district court's denial of the defendant's motion to dismiss the indictment based on an alleged violation of the Speedy Trial Act. *Jones*, 676 F.2d at 328-9, 332. *See also United States v. Davis*, 786 F.2 610, 613 (8th Cir. 1986) ("an arrest under § 3161(b) means a formal arrest, such as when a complaint, information or indictment has been filed.").

Other circuits have agreed that a charge is necessary to commence the running of time period for the Speedy Trial Act. The Eleventh Circuit found that section 3162(a)(1) "establishes that Congress intended the provisions of the [STA] to apply only in an individual as formally charged with an offense." *United States v. Sayers*, 698 F.2d 1128, 1131 (11th Cir. 1983). In another case, the Eleventh Circuit further held that "[a] defendant is not arrested for the purposes of the Speedy Trial Act, [] until formal charges are pending. . .[t]he same is true for the Sixth Amendment right to a speedy trial." *United States v. Sanchez*, 722 F.2d 1501, 1509 (1984). Indeed, the D.C. Circuit itself underscored in *Mills* stated that "[t]here appears to be undisputed support among the circuits for this reading of the interplay between §§ 3161(b) and 3162(a)(1)." *Mills*, 964 F.2d at 1189; *see also United States v. Bloom*, 865 F.2d 485, 489–90 (2d Cir.1989); *United States v. Summers*, 894 F.2d 90, 91 (4th Cir.1990); *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987), *cert. denied*, 484 U.S. 1068 (1988) (when an individual is promptly released from federal custody without the Government filing formal charges, there is no "arrest" within the meaning of 3161(b)); *United States v. Alfarano*, 706 F.2d 739, 741 (6th Cir. 1983), *cert. denied*,

461 U.S. 931 (1983); *United States v. Janik*, 723 F.2d 537, 542 (7th Cir 1983); *United States v. Candelaria*, 704 F.2d 1129, 1131-1132 (9th Cir.1983).

Under these standards, Purdy's brief detention at the Capitol on January 6, 2021, plainly did not constitute an "arrest" for purposes of the STA.  No charges were pending against Purdy on January 6, 2021.  Purdy was not processed on any offense, booked into jail, fingerprinted, made to appear before a magistrate judge in the District of Columbia, or required to post a bond.  The criminal complaint and arrest warrant against Purdy were issued on November 3, 2021.  Purdy was arrested on the Federal arrest warrant on November 10, 2021.  Purdy's initial appearance in the District of Columbia on the Federal charges was November 18, 2023, and the Court excluded all time from November 18, 2023, until January 27, 2022, from the speedy trial calculations.  The Indictment was returned January 14, 2022, well before the thirty days had run from Purdy's initial appearance in the District of Columbia.  As such, there was no violation of the Act, and Purdy's Motion to Dismiss should be denied.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court deny Defendant Purdy's Motion to Dismiss in its entirety.

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Lynnett M. Wagner*
           LYNNETT M. WAGNER
           Nebraska Bar No. 21606
           Assistant United States Attorney
           601 D Street, N.W.
           Washington, D.C. 20530
           Tel: (402) 661-3700
           Email: lynnett.m.wagner@usdoj.gov

           */s/ Kyle M. McWaters*
           KYLE M. MCWATERS
           Assistant United States Attorney
           DC Bar No. 241625
           U.S. Attorney's Office for the District of Columbia
           601 D Street, N.W.
           Washington, D.C.20579
           Phone: (202) 252-6983
           Email: Kyle.McWaters@usdoj.gov