IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | **CASE NO. 22-cr-19 (RCL)** |
| **GREGORY RICHARD PURDY, JR., MATTHEW PURDY, and ROBERT TURNER,** | |
| **Defendants.** | |

### UNITED STATES' MOTION IN LIMINE TO PRECLUDE CERTAIN ARGUMENTS AND EVIDENCE

This Court should preclude the defendants from presenting arguments or evidence concerning Gregory Purdy's detention subsequent to his rushing a police line on January 6, 2021. The facts surrounding Purdy's detention, including how long he was detained, hearsay statements made by officers who did not directly witness Purdy's assault, and Purdy's release are not relevant to the charges he faces and do not tend to make any relevant fact more or less probable. the facts surrounding Purdy's detention, even if relevant, would also run afoul of Rule 403's balancing test, as what little probative value they may have is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. As such, evidence of and surrounding Gregory Purdy's detention should be excluded from trial.

### FACTUAL SUMMARY

On January 6, 2021, Purdy entered the restricted area of the U.S. Capitol grounds, the U.S. Capitol Building, exited the building, and eventually ended up on Upper West Terrace. At approximately 3:24 p.m., Purdy opposed a line of Metropolitan Police Department ("MPD") officers at the front of a large group of rioters. The MPD officers prevented the rioters from re-entering the Upper West Terrace, on the West side of the Capitol. Purdy is recorded on MPD

Body Worn Camera (BWC) saying to the officers: "We're on the same team. You don't have to take these orders." Purdy later said to the officers, "Are you guys going to let us in, or are we gonna have to push in?" At various times, Purdy turned back to the crowd of rioters and appeared to wave others in the crowd behind him to move forward. At approximately 3:30 p.m., Purdy yelled to the crowd, "Guys, we all gotta go at once." With raised hands, Purdy then counted down from ten to one; upon reaching one, Purdy rushed the police line and forced his way past.

Subsequently, several MPD officers chased and restrained him. MPD Officer O.A. restrained Purdy using a zip tie but had not witnessed Purdy's initial assault. Purdy was escorted by MPD Officer O.A. into the U.S. Capitol Building. MPD and U.S. Capitol Police officers escorted Purdy and another rioter through the U.S. Capitol building and the Rayburn Building. The group reached an outdoor entrance of the Rayburn Building at approximately 3:49 p.m. Once there, Purdy stood next to a column.

While the officers waited for further instruction on what to do with the two detained rioters, around 3:58 pm, USCP Officer J.W.—who was not present for the assault and whose role in Purdy's detention was to guide the MPD officers through the U.S. Capitol and Rayburn Buildings—stated the following to MPD Officer O.A.:

> Officer J.W.   Herein lies the problem; he just told your officials, y'all didn't see it, I didn't see it. None of us can testify to what these guys are getting locked up for. What the fuck are we doing here?
> I'm not mad at ya buddy, I'm just frustrated. I've been sprayed, I've been fucking kicked, punched, I'm fucking mad as shit at all these fucking people.

At approximately 4:06 p.m., after MPD and U.S. Capitol Police officers had discussed potential next steps with respect to Purdy and the other rioter who had been detained, MPD Officer A.W. stated to the other detainee, in earshot of Purdy:

> Officer A.W.   Alright, so this is the deal, okay. You've been detained. Do you have any medical emergencies. Okay. So go ahead and stand up for me. Capitol Police is not going to process your arrest for crossing the police line, so today is your lucky day. Okay. Don't come back. Just take a walk somewhere. Go back to your hotel, get yourself together. Okay.

At approximately 4:11 p.m., the MPD Officers removed the zip ties from Purdy, and he was released along with the other rioter. After removing the zip ties, MPD Officer A.W. and Purdy had the following conversation:

> Officer A.W.   We got your picture, we didn't get your information, right? But we got your picture. Don't, don't jeopardize it. Alright, cause you're really getting a break here, alright.
> Purdy:   No, honestly, you guys are my heroes.
> Officer A.W.   Listen go with him, so he can find some shoes. Go that way. See you guys.

None of the officers involved in Purdy's temporary detainment witnessed Purdy's actions on the Upper West Terrace that led to his detention.

## **LEGAL STANDARD**

Relevant evidence is admissible, Fed. R. Evid. 402, and evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed R. Evid. 402. The proponent of admitting an item of evidence has the initial burden of establishing relevance. *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990); *United States v. Oseguera Gonzalez*, 507 F.Supp.3d 137, 147 (D.D.C. 2020). Relevant evidence may be excluded if its "probative value is substantially outweighed" by countervailing factors such as "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

Any evidence concerning the defendant's brief detention by police, or statements made by officers while the defendant was detained, on January 6, 2021, should be excluded as irrelevant. Officers guarding Purdy and another rioter during their brief detention made comments regarding their second-hand understanding of Purdy's actions leading to his detention. Further, Officer J.W. made a comment that he and the other officers hadn't seen what acts Purdy and the other rioter committed and questioned, "What the fuck are we doing here." Purdy and the other rioter were released a few minutes later and told it was their "lucky day."

The mere fact that Purdy was detained and released subsequent to his rush and assault on officers in no way makes the fact of consequence (here, whether Purdy did, in fact, rush officers) "more or less probable." *See* Fed. R. Evid. 401. Further, whether officers made comments to each other that they did not see Purdy's actions has no bearing on defendant's guilt for his violent assault on officers on January 6, his active participation in a civil disturbance, and his unlawful presence on restricted Capitol Grounds during the certification of the 2020 Electoral College vote. His brief detention is not an issue for the jury's consideration and certainly does not have the "tendency to make the existence of any fact that is of consequence to the determination" of the trial "more or less probable[.]" Fed. R. Evid. 401.

Even assuming the evidence to be excluded is marginally relevant, such vanishing relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See* Fed. R. Evid. 403. Whether the officers supervising Purdy witnessed his assault has no bearing on his actual guilt; accordingly, the probative value of that evidence is, if any, minimal. In contrast, the officers' statements present a real danger of confusing the issues at trial and misleading the jury by shifting the factfinder's focus from the defendant's conduct to

4

the entirely separate (and irrelevant) issue of how Purdy's detention was handled *after* Purdy already completed his offenses. Such a "mini-trial" within the trial would be needlessly distracting and confusing for the jury. It would also be a complete waste time.  Accordingly, any evidence of or regarding Purdy's detention on January 6 should be barred.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court preclude the defendants from presenting arguments or evidence concerning Gregory Purdy's detention subsequent to his rushing a police line on January 6, 2021.

Dated:   April 22, 2024

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
| By: | */s/ Kyle M. McWaters*<br>Kyle M. McWaters<br>Assistant United States Attorney<br>D.C. Bar No. 241625<br>LYNNETT M. WAGNER<br>Nebraska Bar No. 21606<br>Assistant United States Attorney<br>601 D Street NW<br>Washington, DC 20530<br>(202) 252-6983<br>kyle.mcwaters@usdoj.gov<br>(402) 661-3700<br>lynnett.m.wagner@usdoj.gov |