UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **GREGORY RICHARD PURDY & ROBERT TURNER**, <br><br> *Defendants.* | Case No. 1:22-cr-19-1 (RCL) <br> Case No. 1:22-cr-19-3 (RCL) |

**MEMORANDUM ORDER**

On January 13, 2025, defendants Gregory Purdy and Robert Turner jointly filed three motions: a motion to compel discovery and two motions for new trial. *See* ECF No. 282-1 (styled as a "Motion to Compel and Stay of Proceedings Until Completion of Basic Production of Discovery by Prosecution") (hereinafter "First Mot."); ECF No. 282-2 (styled as a "Motion for New Trial Pursuant to Rule 33 and Newly Discovered Testimony and Affidavit") (hereinafter "Second Mot."); ECF No. 282-3 (styled as a "Motion for Dismissal or for New Trial Pursuant to Rule 33 Due to Brady and Giglio Violations") (hereinafter "Third Mot."). For the foregoing reasons, these motions are **DENIED**.

**A. First Motion: Motion to Compel Discovery**

The First Motion asks this Court to compel discovery so that the defendants may "adequately prepare for our motions hearing, PSR objections, or sentencing if a new trial isn't granted."[1] First Mot. at 1. The defendants provide a timeline of their attempts to procure discovery since December 6, 2024—the date when defendants began proceeding *pro se*—including multiple

---

[1] The Court focuses here on the defendants' request for discovery in order to file post-trial motions. As the Court has stressed at numerous status conferences, the Court will continue to ensure that the government provides the defendants with all material that they are entitled to for the upcoming sentencing.

1

requests at various status conferences and several deliveries of flash drives to the D.C. jail. *Id.* at 2. However, the defendants maintain that a large amount of necessary discovery is still missing and ask this Court to compel the production of those materials. *Id.*

"The Federal Rules of Criminal Procedure do not specifically provide for discovery procedure in aid of motions for a new trial pursuant to Rule 33." *United States v. Yousef*, 1999 WL 714103, *4 (S.D.N.Y. Sept. 13, 1999). However, "most courts . . . seem to acknowledge that, in certain circumstances, some discovery may be appropriate as part of the post-trial factual development." *United States v. Williams*, No. 02-cr-01372 (ALC), 2017 WL 3613661, at *2–3 (S.D.N.Y. Aug. 21, 2017) (collecting cases). Some courts refer to the standards governing discovery in habeas corpus petitions. *Id.* at *3 (citing *United States v. Velarde*, 485 F.3d 553, 559–560 (10th Cir. 2007)). Other courts are guided by Rule 16 of the Federal Rules of Civil Procedure. *Id.* (citing *United States v. Bin Laden*, No. 98-cr-1023 (KTD), 2005 WL 287404, at *11 (S.D.N.Y. Feb. 7, 2005). Under the habeas corpus standard, discovery is available upon a showing of "good cause" which requires the petitioner to "present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)) (internal quotation marks omitted, alteration in original). Under Rule 16, a defendant is entitled to documents and tangible objects that are "material to preparing the defense" upon request. Fed. R. Crim. P. 16(a)(1)(E); *see also United States v. Sutton*, No. 21-cr-0598 (PLF) (D.D.C. Sept. 8, 2023), ECF No. 509 (applying Rule 16 to deny two post-trial motions to compel discovery).

Here, under either standard, the defendants' motion is futile. The First Motion lists approximately twenty items the defendants wish to receive, including the body worn cameras of

eight police officers, video footage with a birds-eye view angle of the assault for which Mr. Purdy was convicted, a full HBO documentary that features the defendants, and information regarding other Capitol Rioters.  First Mot. at 3–7.  As grounds for why they are entitled to these items, defendants state the following: "In the aforementioned line item requests, myself and Mr. Turner are either in direct view of the camera or directly adjacent. This is not a mass fishing expedition. All evidence contained in these requests will have a heavy weight of corroborative evidence to our innocence."  First Mot. at 7.  But this conclusory statement does not establish "good cause" for discovery under the habeas standard, nor is it "material" to preparing post-trial motions under Rule 16.  Simply being captured in videos does not present any specific allegations that convince this Court that the defendants would be entitled to relief.  At trial, the government played extensive video footage of the incidents for which Mr. Purdy and Mr. Turner were convicted, and the jury found that this evidence, along with testimony from numerous officers who witnessed those incidents, established the defendants' guilt beyond a reasonable doubt.  It strains credulity to see how more video footage, depicting the same incidents, would provide a basis for relief.  Indeed, although the defendants claim this discovery request is not a "fishing expedition," it appears to be just that: the defendants argue that "[m]ultiple motions regarding newly discovered evidence pursuant to Rule 33 still need to be submitted and can't be without access to the discovery."  First Mot. at 3.  To the Court, this reads as though the defendants want discovery to see if they can find a basis for yet another new trial motion.[2]  The "newly discovered evidence" standard of Rule 33 is not an invitation for the defendants to continue on a path of seeking discovery indefinitely.

The defendants are particularly adamant about receiving discovery regarding Officer Anthony Smith.  First Mot. at 2–3 ("[W]e specifically requested the most important unproduced

---

[2] The defendants have filed upwards of ten separate motions for new trial, all of which the Court has denied.

3

discovery was exculpatory material in connection with Anthony Smith, Turners [*sic*] accuser, whom is under investigation for almost 20 stolen guns and weapons from his arrestee victims."). The Court first notes that the defendants' characterization of this material as "exculpatory" is erroneous—such information would be more aptly characterized as "impeaching." *See* Black's Law Dictionary (12th ed. 2024) (defining "impeachment evidence" as "[e]vidence used to undermine a witness's credibility" and "exculpatory evidence" as "[e]vidence tending to establish a criminal defendant's innocence"); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

In any event, while it is true the defendants are entitled to both exculpatory and impeachment evidence, *see United States v. Bagley*, 473 U.S. 667, 676 (1985), information about Officer Smith does not fall into that bucket. Indeed, this exact challenge regarding Officer Smith was made, and rejected, at trial. *See* Trial Tr. June 6, 2024, at 117:9–10. Officer Smith was not a government witness, and it is incorrect for the defendants to call him the "accuser." *See* Trial Tr. June 6, 2024, 115:17–19 ("[Officer Smith is] not going to be a witness, never was going to be a witness for the government, and we have been very clear on that from the beginning."). His credibility is not determinative of guilt or innocence, and it's mystifying to the Court how the alleged suppression of impeachment evidence of a non-witness could have prejudiced the defense. Officer Smith was the *victim* of an assault, and a jury found that the government met its burden of proof to show that Mr. Turner committed that assault, without calling Officer Smith to the stand. That is a legitimate choice of trial strategy by the government. Trial Tr. June 6, 2024, 115:3–6 ("[T]he government can prove its case however we want. There are four total named victims in this case. We're only calling two of them, as part of economy of the prosecution's case.").

In short, the defendants have not shown that further discovery at this stage in the proceedings would provide them with any basis for relief. For these reasons, the First Motion is **DENIED**.

**B. Second Motion: New Trial**

In the Second Motion, the defendants argue that the affidavit and testimony of Mr. Dominic Box, another Capitol Rioter who entered the Capitol "7 seconds after" Mr. Purdy and whom Mr. Purdy met for the first time in jail, can constitute newly discovered evidence. Second Mot. at 1. Mr. Purdy specifically argues that Mr. Box "can attest to evidence that [Mr. Purdy's] actions were not violent or to harm police officers" because he was "right next to [Mr. Purdy] at critical moments." Second Mot. at 9. But this evidence is not sufficient to justify the extraordinary relief of a new trial.[3]

For a defendant to obtain a new trial based on newly discovered evidence, the defendant must satisfy five requirements: (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) [it must be] of such nature that in a new trial it would probably produce an acquittal. *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993). A nonparty witness's post-trial offer to testify could conceivably be considered newly discovered evidence if these parameters are met. *United States v. Gloster*, 185 F.3d 910, 914–15 (D.C. Cir. 1999).

---

[3] The Second Motion says that Mr. Box submitted an affidavit attached as an Exhibit to the Motion outlining his willingness to testify. Second Mot. at 2. The Court never received this affidavit. However, even assuming that the representations in the Second Motion regarding the contents of this affidavit are true, this evidence would not justify a new trial, as explained *infra*.

However, the defendants fail to meet these requirements. For one, it does not appear to the Court that the proffered testimony of Mr. Box meets prong 2—that is, that such evidence could not have been discovered earlier with due diligence. At trial, both defendants were represented by counsel. "[D]ue diligence has not been exercised if the defendant *or his counsel* could have, without unusual effort, acquired the evidence before or during the trial." *United States v. Stone*, 613 F. Supp. 3d 1, 40 (D.D.C. 2020) (quoting *United States v. DiMattina*, 885 F. Supp. 2d 572, 577 (E.D.N.Y. 2012)) (emphasis added). It seems to the Court that defense counsel could have simply subpoenaed Mr. Box's testimony for the trial. But the choice of whether to call witnesses to build a defense case is a complex decision of trial strategy, given that such testimony exposes the witness to the "crucible of cross-examination" that could do more harm to the defendants' case than good. *Deutsch v. U.S. Atomic Energy Comm'n*, 401 F.2d 404, 408 (D.C. Cir. 1968). It is possible—even likely—that defense counsel made the calculated decision to not call another Capitol Rioter to attest to an interpretation of events belied by the government's exhibits and directly contradicted by the government's eyewitnesses.

Moreover, the proffered testimony of Mr. Box is not likely to produce an acquittal. Mr. Box is also a convicted Capitol Riots defendant, currently awaiting sentencing, with a vested interest in representing January 6 as a day of peaceful protest. *See United States v. Box*, No. 22-cr-413 (CKK). Presumably, the government would try to impeach Mr. Box for bias given his aligned incentives, undermining his effectiveness as a defense witness. And moreover, his testimony would run up against the government's significant body of evidence proving the defendants' guilt beyond a reasonable doubt: footage from law enforcement's body-worn cameras, CCTV video clips, social media posts, diagrams and photos of the Capitol, and testimony from numerous police officers present that day. *See* Government's Final Exhibit List,

6

ECF No. 201. It is highly unlikely that one lone eyewitness with a biased interpretation of events in direct contradiction to this mountain of evidence would result in an acquittal under prong 5 of the *Lafayette* standard. Therefore, the defendants are not entitled to a new trial on these grounds.

### C. Third Motion: New Trial

The Third Motion raises many of the same challenges as the First Motion regarding requests for Officer Smith's impeachment material pursuant to *Brady* and *Giglio*. To the extent the defendants argue for more discovery on this point, the motion is denied for the reasons stated *supra*. But moreover, there is no "newly discovered evidence" identified in this motion, because the defendants already knew about it—this motion appears to raise the exact same arguments that this Court has already heard and rejected. *See* Trial Tr. June 6, 2024, 113:1–118:13. Oddly, the defendants attempt to characterize impeachment material about Officer Smith as "newly discovered" because defense counsel learned about it "after the jury was sworn in." Third Mot. at 1, 12. But the timeline of jury swearing-in is irrelevant; the information in this Motion was known to both parties at trial and was the subject of extensive discussion, and it was put to rest—because Officer Smith was not a witness. As the Court has explained to the defendants may times before, the only basis for a motion for new trial filed more than fourteen days after the verdict is *newly discovered evidence*. Fed. R. Crim. P. 33(b)(1). The Third Motion improperly labels matters that were known and litigated at trial as "newly discovered." But without any legitimate identification of newly discovered evidence, this Motion is without merit.

Therefore, upon consideration of the defendants' motions and the entire record herein, it is hereby

**ORDERED** that ECF No. 282-1 (styled as a "Motion to Compel and Stay of Proceedings Until Completion of Basic Production of Discovery by Prosecution") is **DENIED**; it is further

**ORDERED** that ECF No. 282-2 (styled as a "Motion for New Trial Pursuant to Rule 33 and Newly Discovered Testimony and Affidavit") is **DENIED**; and it is further

**ORDERED** that ECF No. 282-3 (styled as a "Motion for Dismissal or for New Trial Pursuant to Rule 33 Due to Brady and Giglio Violations") is **DENIED**.

**IT IS SO ORDERED.**

Date: _1-14-25_

Royce C. Lamberth
United States District Judge